## HARTFORD FIRE INS. CO., Respondent, v. SAM L. CASEY et al, Appellant.

### Kansas City Court of Appeals, January 29, 1917.

1. **PRINCIPAL AND SURETY: Failure to Notify Surety of Principal's Dishonesty: Release of Surety.** As to surety bonds which are silent on the subject of notice, failure to notify the surety of any dishonest conduct on the part of the principal coming to the knowledge of the obligee will release the surety as to all losses suffered subsequent to the obtaining of such knowledge.

2. ———: **Notice of Lack of Diligence: Release of Surety.** But the obligee's knowledge of mere negligent inattention to business, failure to attend to it promptly, a want of diligence or something of that kind, not amounting to a lack of integrity on the part of a bonded agent, will not require notice thereof to be given the surety by the obligee, unless the surety, by inquiry, creates such obligation.

3. ———: **Waiver of Notice: Release of Surety.** Even though the obligee in the bond of a fire insurance agent had knowledge that the agent had converted balances to his own use and was therefore dishonest to the extent of using money not his own although he afterwards paid up, still, plaintiff's failure to notify surety did not release the surety where the bond contained an express agreement on the part of the surety obviating the necessity of notice, the surety making no inquiry and the obligee being guilty of no concealment, although the waiver clause would not authorize the obligee to set back and intentionally invite an agent, known to be a thief and known to be stealing, to continue on and steal more.

4. ———: **Alteration of Agency Contract: Discharge of Surety.** Where the changes made in the dealings between the agent and his company were mere changes in the method of doing business and in the rules governing same, and were not changes of the contract of agency or of the contract of suretyship, and did not increase the surety's risk, they did not have the effect of releasing the surety.

5. ———: **Amount of Liability on Surety Bond: Attorney Fee.** The obligee cannot recover more than the penalty of the bond and where it contains a stipulation for an attorney's fee, this means that the fee shall be considered as a part of the damages within the amount of the bond and not that the fee may be collected in addition to the amount of said bond.

6 .———: **Termination of Agency: Discharge of Surety.** After a fire insurance agent got behind with his remittances to the company, the latter suspended his authority to write new risks until he should make full payment, but his authority to perform many other agency duties was not disturbed and he continued to perform them and to remit from time to time until his balance due had been fully paid up when he resumed the writing of risks. During the few days he wrote no new policies he continued in charge of the office and was the company's agent. *Held,* that the trial court sitting as a jury was justified in holding that there was no termination of the agency relation nor creation of a new contract in relation thereto, and that the surety could not rightly claim to be discharged on that account. Nor does the fact that the company notified the agent not to write new insurance as the company was preparing to suspend operations in the State, constitute a disruption of the agency relationship, where the company did not in fact suspend and the principal and agent never contemplated that the agency was terminated.

Appeal from Jackson Circuit Court.—*Hon. Kimbrough Stone,* Judge.

AFFIRMED (*conditionally*).

*Frank P. Brumback* for appellant.

*W. B. Kelley* for respondent.

TRIMBLE, J.—Plaintiff insurance company sues upon a bond given to it by one of its agents for the faithful performance of his duties. The agent, Sam L. Casey, and principal in the bond, filed no answer in the case. The surety, William A. Nettleton, made defense. A jury was waived and the cause was tried by the court. Judgment was rendered in plaintiff's favor for $2500 the full amount of the bond, and for $250 attorney's fee, aggregating the sum of $2750. The surety has appealed.

Casey was appointed agent April 1, 1904, and the bond was executed and delivered on that date. It was in the regular form of a bond in the sum of $2500 with the collateral condition therein that:

"If the said Sam L. Casey, shall in all respects faithfully and well, perform his duties as such agent

and observe and fulfill the instructions and directions, general and special, which may from time to time be given to him by said Company and its authorized officers and agents, and duly and punctually, account for, pay over and properly apply all premium moneys due and payable upon and by the terms of policies issued by the said agent, whether at that time collected by the said agent or not, and all other sums of money, which may come to him as such agent, or for and on account of said Company, and duly and properly account for and apply all goods, chattels, or other property, which may come into his possession, or under his control, as such agent, or for said Company, and, upon the termination of his agency, from whatever cause, immediately account for, and pay over unto said Company all moneys in his hands as such agent, or that may then be due from him to said Company, and deliver up to said Company, or such person or persons as it may designate all supplies, blanks, accounts, memoranda, records of business done for or upon account of said Company, and other property, things and effects of said Company, then this obligation to be void and of no effect, but otherwise to remain in full force and effect.''

The instrument then closed with the following paragraph appearing just above the signatures:

''It is further covenanted and agreed by said above bounden parties, that, if suit be brought to enforce any of the obligations of this bond, the said Company shall, in case of recovery, be allowed a reasonable attorneys' fee, and all costs, expenses and cash outlays arising, to be paid in addition to the amount otherwise recovered; and the said sureties waive notice of any default the said above bounden principal may at any time make, and hereby agree that failure to give such notice shall not, in any manner, affect their obligations under this bond.''

No question is made over the authority of the plaintiff to take the bond nor of its due execution. It is conceded that on August 9, 1913, the agent Casey

was indebted to plaintiff in the sum of $2711.03 for premiums collected by him on policies issued during the months of April, May, June, July and August, 1913; and that on said date demand was made of said agent and his surety for the payment of said amount, and that payment has not been made. Suit was brought February 14, 1914.

The defense of said surety was made upon what may be divided into three grounds: 1. That on December 20, 1912, the plaintiff terminated the agency and suspended the authority of said agent to issue policies until he should pay all premiums due the Company and collected by him up to November 1, 1912; that afterwards, upon the payment of all sums due from him up to November 1, the company reinstated him as gent; that the surety knew nothing of this; and the suspension and subsequent reinstatement was, as to such surety, a cancellation of the old contract of agency and the making of a new contract, for the performance of which he was not liable. 2. That said agent, prior to December 20, 1912, had misappropriated and converted to his own use the premiums he had collected and then owed, and that plaintiff, with knowledge of said agent's dishonest conduct, neither notified the surety nor discharged the agent, but continued to allow him to act in that capacity, whereby the surety was released and discharged from liability for all losses arising from the subsequent defaults of such agent. 3. That during the continuance of said agency the plaintiff, without notice to the surety, changed the postage allowable to the agent from fifteen cents per policy to five cents, and required the agent to remit premiums in forty-five days after the issuance of the policy instead of seventy-five days, and that by reason of such changes in the contract of agency without notice to the surety, the latter was released.

With reference to the first ground above mentioned, the evidence discloses no discharge and reinstatement of said agent whereby a new contract of

agency was created. It seems that the agent did get behind in his remittances to the Company and that a large amount of correspondence passed between them in relation thereto, the agent sending in small amounts from time to time and asking for time as to the balance due and giving various reasons for not sending same in at the time promised; and that finally the Company notified him that his authority to accept new risks was suspended until he should make settlement, and for a period of four days, according to plaintiff, and fifteen days, according to the agent, he wrote no new policies. But he had many other duties to perform in addition to writing policies, namely, collect premiums, make proofs of loss, cancel insurance and return premiums, report losses, adjust some of them, pay some of them and correspond generally with the Company in regard to the business. All these duties the agent continued to perform without interruption during the few days he did not write new insurance. He continued in charge of the office and of the plaintiff's business and the correspondence shows that he was still agent during that time. He paid up the amount due and resumed writing new risks and collecting new premiums. His compensation was not a fixed salary but was a commission of fifteen, twenty and twenty-five per cent, according to the character of the work done, and there was no change in said compensation from the time the bond was given in 1904 to the date of the ending of said agency in August, 1913. Under the evidence, the trial court sitting as a jury was clearly justified in finding that there was no termination of the agency or creation of a, new contract in relation thereto, and that the surety could not rightfully claim to be discharged on that account. In April, 1913, the plaintiff, along with other insurance companies, having gotten at outs with the General Assembly over the passage of the Orr law, notified all its agents, including Casey, not to write new insurance until the matter was adjusted as the company was looking forward to being compelled to sus-

pend operations in Missouri. This was not mentioned in the pleadings as a termination of the contract of agency, but even if it had been, we do not think it would constitute any disruption of the agency relationship existing between plaintiff and Casey. Certainly the parties never contemplated that such was the result. Nor did such notification have the effect of releasing all agency bonds and the requiring of new ones. This last notice was no more a termination of the agency and the creation of a new contract in regard thereto than was the former notice.

As to the second ground upon which release is claimed, namely, that the company did not notify the surety of the agent's falling behind in remitting his premiums, the general rule is well settled, as to bonds which are silent on the subject of notice, that failure to notify the surety of any dishonest conduct on the part of the principal coming to the knowledge of the obligee, will release the surety as to all losses suffered subsequent to the obtaining of such knowledge. [Phillips v. Foxall, 7 L. R. Q. B. 666; Charlotte etc. R. Co. v. Gow, 59 Ga. 685; Rapp v. Phœnix Ins. Co., 113 Ill. 390; Connecticut Mut. Life Ins. Co. v. Scott, 81 Ky. 540; Farmers Bank of Deepwater v. Globe Surety Co., 192 Mo. App. 243.] And it is also the rule that knowledge of mere negligent inattention to business, failure to attend to same promptly, a want of diligence or something of that kind, not amounting to a lack of integrity, on the part of the bonded agent, will not require notice thereof to be given the surety by the obligee, unless the surety by inquiry creates such obligation. [Home Ins. Co. v. Holway, 8 N. W. 457; Elliott v. Qualls, 149 Mo. App. 482; Wilkerson v. Crescent Insurance Co., 40 S. W. 465; Watertown Fire Ins. Co. v. Simmons, 131 Mass. 85; Lake v. Thomas, 36 Atl. 437; Harris v. Newell, 42 Wis. 586.] So far as concerns the evidence offered by plaintiff and the correspondence between the company and the agent with reference to the balances due from the latter, there does not appear to be anything

disclosing dishonesty on the part of the agent at the time he got behind in the latter part of 1912, any more than that the fact he had not remitted and was not able to do. so would tend to indicate that, technically, he might be guilty of embezzlement; but he paid up these amounts, thereby disclosing that he was not intentionally seeking to get away with plaintiff's property but was honestly paying what was due from him. However, conceding that plaintiff had knowledge that the agent had converted the balances due to his own use, and was, therefore, dishonest to the extent of using money not his own although he afterwards paid up, still we do not think plaintiff's failure to notify the surety was ground for the latter's release under the circumstances herein and the express agreements of this particular bond. As stated before, the bond contained a specific agreement to the effect that "the said sureties waive notice of *any default* the said above bounden principal may *at any time* make, and hereby agree that failure to give such notice shall not in any manner, affect their obligations under this bond." This was an express agreement on the part of the surety obviating the necessity of notice. He made no inquiry at any time to inform himself as to the way in which the agent was carrying on the business; nor was the plaintiff guilty of any concealment of the agent's conduct. We may grant defendant's contention that this waiver clause would not authorize plaintiff to intentionally sit back and invite an agent, *known* to be a thief and *known* to be stealing, to continue on and steal more, with the idea on plaintiff's part that no matter if he did continue to steal, his surety would make good the loss. Such conduct on plaintiff's part would be tantamount to fraudulent collusion with the agent whereby plaintiff would consent to the stealing with the expectation of being reimbursed therefor by the agent's surety. The evidence does not afford room for that view of the case, nor did the instructions asked by defendant, and which were refused by the court, cover that extreme situation.

The third ground relied on, to-wit, that a change was made in the amount of postage allowed and in the time of remitting of premiums is insufficient to release defendant. The agent was not on a fixed salary. His compensation was the commissions above mentioned. No change was made in them. The matter of postage was not a part of the contract of agency which the surety agreed to guarantee. It seems that it had been a custom for agents to take credit for postage at the rate of fifteen cents a policy written, and that, although this exceeded the postage used, the company allowed it to be done, until by agreement of all insurance companies the matter of postage was regulated and reduced to five cents a policy, and this more than covered the postage used. The lessening of the time the agent should allow his customers to pay their premiums was not a change of the contract of agency or of defendant's contract of suretyship. It did not increase defendant's risk. One of the conditions of the bond was that the agent should "observe and fulfill the instructions and directions, general and special, which may from time to time be given to him by said company and its authorized officers and agents." And the change of time of remittance was merely a change in one of the general rules of the company and comes within the above quoted provision. The bond makes no mention of the compensation the agent is to receive nor as to the details of the agreement between the agent and the company. If the surety had thought any of the details thereof was an essential ingredient of the contract of surety, then it would seem that a stipulation should have been expressly inserted in the bond that they would be liable only so long as such details remained the same [Frank v. Edwards, 8 Exch. 214.] The matters changed were not such as were essential ingredients in the contract of surety and therefore what was done with respect to them did not have the effect of releasing the surety. [Amicable, etc. Ins. Co. v. Sedgwick, 110 Mass. 163; Harper v.

National Life Ins. Co., 56 Fed. 281; Taylor v. Standard Life Ins. Co., 66 N. W. 647; 32 Cyc. 182.]

As stated, the full amount of the bond was $2500. The damages exceed that amount, and the court rendered judgment for the face of the bond. But the court also rendered judgment for $250 attorney fee in addition to the full amount of the bond. We think this was erroneous. It is true the bond contains a stipulation for the payment of an attorney's fee, expenses and cash outlay, if suit be brought on the bond. But this stipulation has reference to *the damages* that may be recoverable upon a violation of the bond and is not a part of the penalty of the bond. In other words, the agreement that an attorney's fee may be recovered means that it may be recovered as a part of the *damages within the amount for which the surety has agreed to be bound*. The suit is on the bond and the surety has agreed to be bound to the extent of $2500 if the obligee's damages shall be that much, but that is the extent to which he has agreed to be bound. He is not required to pay more than the damages actually sustained although they exceed the amount of the bond. Section 1240, Revised Statutes 1909, provides that judgment shall be rendered for the penalty of the bond and plaintiff shall have execution for the damages assessed. Of course, if the damages assessed exceed the penalty of the bond the plaintiff cannot recover such excess from the surety since there is no judgment for anything except the penalty of the bond and *no authority for any execution except for the damages within the penalty*. The general rule has always been that plaintiff cannot recover more than the penalty of the bond. [Farrar v. Christy's Admr., 24 Mo. 474; State ex rel. v. Woodward, 8 Mo. 353; State ex rel. v. Sandusky, 46 Mo. 381; Board of Education v. National Surety Co., 183 Mo. 166, 184; Sholes v. Freeman, 81 Mo. 540.] An attorney's fee is a part of the loss sustained by an obligee when compelled to sue on a bond. In other words, it partakes of the nature of the damages sustained, and the agreement to pay same

makes it a part of such damages. But the bond does not provide for protection against damages beyond the amount of the penalty. As to such damages in excess of the penalty the obligee must stand the loss himself or at least look elsewhere than to the surety. Consequently when the attorney's fee, made a part of the damages by a clause to that effect in the bond, forms a part of the excess above the face of the bond, then the obligee must stand the loss of that too, at least so far as the surety is concerned. The judgment in this respect can be remedied by remittitur. If, therefore, the plaintiff will, within ten days from the date of the announcement of this opinion, enter a remittitur of said $250 with all interest thereon from date of judgment, the judgment will be affirmed. Otherwise it will be reversed and remanded. All concur.