BASIC REFRACTORIES, Inc., a Corporation, Appellant, v. WILLIAM C. BRIGHT and WILLIAM C. BRIGHT, Jr., Copartners Doing Business Under the Fictitious Name and Style of William C. Bright and Son; HAROLD W. GOODWIN, Doing Business Under the Fictitious Name and Style of Nevada Paint and Floor Service; and ENTERPRISE ELECTRIC CO., Inc., a Corporation; H. R. CURL; READY-MIX CONCRETE COMPANY, a Corporation; SAVIERS ELECTRICAL PRODUCTS Inc., a Corporation; PETERSON-McCASLIN LUMBER COMPANY, a Corporation; JACQUES MORVAY, Respondents.

STANDARD SLAG COMPANY, a Corporation, Appellant, v. BASIC REFRACTORIES, INC., a Corporation, Respondent.

GLOBE INDEMNITY COMPANY, a Corporation, Appellant, v. STANDARD SLAG COMPANY, a Corporation, Respondent.

STANDARD SLAG COMPANY, a Corporation, Appellant, v. GLOBE INDEMNITY COMPANY, a Corporation, Respondent.

Nos. 3875, 3884, 3886, 3889.

June 18, 1956.                    298 P.2d 810.

(Rehearing denied in No. 3889 November 13, 1956.)
See also 71 Nev. 248, 286 P.2d 747.

*Vargas, Dillon & Bartlett,* of Reno, for Appellant Basic Refractories, Inc.

*Stewart and Horton,* of Reno, for Respondents William C. Bright, William C. Bright, Jr., Harold W. Goodwin, and Enterprise Electric Co., Inc., a Corporation.

*Goldwater, Taber & Hill,* of Reno, for Respondent H. R. Curl.

*Springmeyer & Thompson,* of Reno, for Respondent Ready-Mix Concrete Company, a Corporation.

*John S. Halley,* of Reno, for Respondent Saviers Electrical Products Inc., a Corporation.

*Wilson & Brown,* of Reno, for Respondent Peterson-McCaslin Lumber Company, a Corporation.

*Lohse & Fry,* of Reno, for Respondent Jacques Morvay.

*Sidney W. Robinson,* of Reno, for Globe Indemnity Company.

*Leslie B. Gray,* of Reno, for Standard Slag Company.

# OPINION

By the Court, BOWEN, District Judge:

As a result of a judgment and decree of lien foreclosure, three appeals and one cross-appeal are now to be considered upon a consolidated appeal. While certain procedural steps have heretofore been considered in our decision on respondents' motion to dismiss the appeal of Basic Refractories, Inc., 71 Nev. 248, 286 P.2d 747, we must of necessity refer to those and to other facts and circumstances as they become applicable to our decision upon each of the appeals and the cross-appeal, which for convenience may be summarized as follows:

1. No. 3875. An appeal by Basic Refractories, Inc., hereinafter referred to as "Basic" from that certain judgment of lien foreclosure, dated January 31, 1955, in favor of respondent lien claimants.

2. No. 3884. An appeal by Standard Slag Company,

hereinafter referred to as "Standard" from that certain order for summary judgment, dated February 17, 1955, in favor of Basic against Standard.

3. No. 3886. An appeal by Globe Indemnity Company, hereinafter referred to as "Globe" from that certain order dated March 29, 1955, granting summary judgment in favor of Standard and against Globe.

4. No. 3889. Cross-appeal by Standard against Globe, which questions the limitation of the amount of the primary judgment of lien foreclosure to $30,294.50 and costs.

It appears from the agreed stipulation of facts upon which the action for mechanics' lien foreclosure was tried in the trial court, that on December 1, 1952, as a condition of purchase of certain property located at Gabbs and Luning, Nevada, Basic as lessee entered into a written lease of a certain townsite located at Gabbs, Nevada, together with the buildings and improvements located thereon and the utilities with the Reconstruction Finance Corporation and the United States of America, both acting by and through the Administrator of General Services as lessor. In addition to providing for a term of ten years and many other matters, the lessee was permitted to rent or lease portions of the premises without consent of the lessor and to enter into mutually satisfactory arrangements with the "present users" of the properties and to protect their interests at Gabbs, Nevada.[1] It was further agreed that Basic should submit an irrevocable bid for the purchase of the property

---

[1]*"FOUR:* The LESSEE shall have full operational responsibility for and control of the properties covered by this lease, including, but not limited to, the right and privilege, without the consent of LESSOR, to rent or lease portions of the premises or the facilities located thereon, and to furnish utility services by sale or otherwise; provided, however, that the LESSEE will undertake in good faith to make mutually satisfactory arrangements with other present users of the properties, to protect their interests at Gabbs, Nevada."

in the event the lessor should decide to sell the property.[2]

Because Standard had mining and manufacturing operations at or near Gabbs, Nevada, which were served by the utilities, and because Basic and Standard were interested in the maintenance and improvements of the townsite for the betterment of their respective operations and the best interests and general welfare of their respective employees, a program for the joint participation in the benefits of, and the obligations with respect to the operation and subleasing of the leased facilities and for the possible acquisition and disposition of the leased premises was entered into by written contract, dated May 1, 1953. Among other things, that agreement provided for the construction by Standard of not more than twenty multiple four-unit residential dwellings which, upon completion, would become the property of the lessor, in this instance the United States of America, and it was provided that these dwellings "* * * * shall be free and clear of any liens, claims or encumbrances whatsoever except the lease."[3]

[2]*"FIVE:* If, during the terms of this lease, the LESSOR invites bids from prospective purchasers in an effort to sell the entire premises leased hereby, subject to the terms and conditions of this lease, the LESSEE, as part of the consideration hereof, agrees that it will submit to the LESSOR a bid of not less than TWO HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($275,000.00) for such premises, payable in installments over a period of twenty (20) years, said bid to constitute an irrevocable offer to purchase until accepted or rejected by LESSOR; provided, however, that Lessor shall accept or reject such bid within a reasonable time after the date set for the opening of bids."

[3]*"TWO:* Standard shall erect not to exceed twenty additional residential units on the townsite in multiple unit structures, each of which shall contain not more than four units, pursuant to this agreement and an agreement with the lessor which shall provide that the twenty residential units when completed shall be and become the property of the Lessor and shall be free and clear of any liens, claims or encumbrances whatsoever except the Lease. Eight of such units shall be erected by December 31, 1953, and the remaining twelve units shall be erected within nine months from the date of written request by either party. The plans and specifications for the twenty residential units shall be subject to approval by Standard, Basic, and the Lessor. In event the cost of said units exceeds $50,000.00, the excess shall be borne one-third by Standard and two-thirds by Basic."

On November 2, 1953, John C. Long, as the Long Construction Company, submitted a written "Proposal" with several alternates to construct three four-unit dwellings at a cost of $60,599, which Standard accepted in writing on November 10, 1953, upon the following terms:

(a) "Builder to furnish completion bond in amount 50% of Contract Price" and

(b) "Builder to keep the Standard Slag Company free from all liens and encumbrances incurred in the performance of this contract and to indemnify The Standard Slag Company against any and all damages which may result or occur during said performance."

Pursuant to the construction agreement as evidenced by the "Proposal" and its acceptance of November 10, 1953, Globe on November 30, 1953, as surety for Standard, thereafter executed a "Contract Bond" in the penal sum of $30,294.50 conditioned upon full performance by Long Construction Company as principal of the construction contract which was incorporated in said bond. Pertinent provisions of that bond appear below.[4]

Long Construction Company thereafter performed the construction contract according to its agreement with Standard, and although fully paid, the Construction Company failed to pay certain labor claims and claims for materials. As a result respondents Goodwin, Bright, and Enterprise Electric filed an action against Basic, Standard, and the United States of America to establish and foreclose their respective liens. Other respondents intervened in the action as lien claimants. The United

---

[4]"WHEREAS, the above bounden Principal has entered into a certain written contract with the above named Obligee, dated the 10th day of November, 1953, [for the] construction of three (3) four (4) unit apartment buildings to be located in Gabbs, Nevada, which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

"Now, therefore, the condition of the above obligation is such, that if the above bounden Principal shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set forth and specified, and shall pay over, make good and reimburse to the above named Obligee, all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void; otherwise to be and remain in full force and effect."

States of America was not served with process and did not appear in the action. Basic thereafter cross-claimed against Standard, which in turn filed its third party complaint against Globe. Globe in turn filed a counter-claim against Long Construction Company.

The trial court entered its judgment and decree of foreclosure on January 31, 1955, and ordered that the leasehold interest of Basic in the three four-unit apartments, together with certain parcels of land upon which the dwellings were located be sold, that the lien claimants be paid, and that if such claim be not paid a deficiency judgment be entered against Long Construction Company. Thereafter followed the entry of successive judgments of Basic against Standard and Standard against Globe.

## APPEAL No. 3875

The first question presented is whether the trial court committed error when it rendered its primary judgment of lien foreclosure on January 31, 1955, in favor of the unpaid lien claimants and against respondent, Basic Magnesium Company. Basic, Standard and Globe all join in this appeal from the primary judgment.

Based upon a construction of a portion of the agreement of Basic and Standard, which provided as follows: "* * * that the twenty residential units when completed shall become the property of lessor, and shall be free and clear of any liens, claims or encumbrances whatsoever, except the lease," appellants contend that the residential units, as soon as constructed, became the property of the lessor, the United States of America, and that governmental immunity attached as soon as they were placed upon the real estate. It is then said that a valid lien cannot be asserted against improvements on real property, title to which is in the United States of America, and governmental immunity not only attaches to the real property and improvements but to every lesser interest. Respondents, on the other hand, contend that it is clear from the agreement that while

the erected buildings became the property of the United States of America free and clear of any liens they at the same time became subject to the lease between the United States of America and Basic, and thus became a part of Basic's leasehold interest, which interest may be subject to mechanics' liens.

On oral argument it was first urged that the United States of America was the only party that could urge the defense of governmental immunity, not Basic, Standard or Globe, and second that the Basic-Standard agreement should not be so construed as to permit them to remove a right of recovery under the State of Nevada mechanics' lien law from the field of litigation through the medium of contract.

While each of respondents' contentions may be determinative, we prefer to rest our decision on the question of whether governmental immunity extends to a leasehold interest.

Cases cited and relied upon by appellants in support of their position are not determinative. For example, John Kennedy and Company v. New York World's Fair, 260 App.Div. 386, 22 N.Y.S.2d 901, dealt with a particular mechanics' lien statute, which, unlike our State, provided for a lien only "upon the moneys of the state or of such corporation applicable to the construction of such improvement." Lien Law, McK.Consol.Laws, ch. 33, sec. 5. Griffith v. Happersberger, 86 Cal. 605, 25 P. 137, 487, did not involve any question of the lienability of a leasehold interest, inasmuch as nothing was leased. Title Guaranty & Trust Company v. Crane Co., 219 U.S. 24, 31 S.Ct. 140, 55 L.Ed. 72, involved a situation where title to certain completed portions of a ship vested immediately in the United States of America, and it was held that under the governmental immunity doctrine materialmen could not directly foreclose their lien against the ship. Unlike the instant case there was no lease-back provision.

On the other hand, Crutcher v. Block, 19 Okl. 246, 91 P. 895, 14 Ann.Cas. 1029, seems more nearly to

approximate our particular situation wherein an action to foreclose a materialmens' lien was upheld, notwithstanding the fact that the building was located on real property, title to which was vested in the United States of America. The Oklahoma court said: "The board for leasing school, public building, and college lands of Oklahoma Territory leased to one * * * Butler * * *. He subleased, as he had a right to under the law and the written condition of his lease, to S. O. Crutcher * * *. Robinson, under contract with S. O. Crutcher, erected a house on this lot in question, and the plaintiff below, having furnished lumber for the erection of this building, and the same having been used in the building and not paid for, filed a materialman's lien for the lumber so furnished * * *. Such a lien, of course, would be subject to all of the conditions of the lease or conveyance under which the party held. Under the rule here adopted, it is immaterial that the legal title to the land in question is in the United States. The United States authorized the leasing of such land for townsite purposes, and by the terms of such a lease an estate is created. The territory and the general government are bound by their contracts the same as an individual, and it is only the estate held by the appellant that can be affected by this lien."

Appellants seek to distinguish Crutcher v. Block by referring to a provision in that particular lease for the removal of the buildings upon the termination of the lease and because reference therein was made to the fact that neither the government nor the territory could be affected to their detriment by the enforcement of this lien because of the provision for removal of buildings, nevertheless, since judgment of lien foreclosure is not only against the buildings but the entire leasehold estate, we fail to see how that distinction is valid and controlling.

Appellants are unduly concerned over any action which might uphold the primary judgment of lien foreclosure in which the United States of America would be

compelled against its consent to accept an unwanted tenant, such as a purchaser upon foreclosure sale and assert that such a sale without the consent of the United States of America or its presence would defeat the mechanics' lien law since it would be impossible to secure a purchaser who would pay anything of value for the sole right of litigating its claim as a successor lessee to properties owned by the United States of America.

Not only does sec. 3737, N.C.L.1929, provide for foreclosure of a lessee's interest but all the authorities hold that the lien merely attaches to the lessee's interest subject to the paramount title of the owner in fee. Whether the party foreclosing the lien may possibly be buying a lawsuit should not be the concern of the appellants. "If it cannot be sold because it is of no value, or if the plaintiff chooses to bid it in at his own risk, he alone has the right to complain. But the purchaser under a legal sale, acquires all the rights, whatever they are, the entire estate, whatever it is, which the defendant has in the premises, to just the same extent that he would by a voluntary purchase from the party * * *." John Turney, Administrator, et al., v. Edward B. Saunders, et al., 4 Scam. 527, 532, (Ill.). If there had been a provision against assignment in the lease, or if there had been a provision for forfeiture of the lease in the event a lien were levied against the property, the Government could have indicated its desire to contract solely with Basic. But such provisions are not to be found in the Basic-Standard lease and from that we may reasonably infer that the government was not concerned with a lien foreclosure and its consequent substitution of another tenant.

It is contended that by reason of the provisions of sec. 3737, N.C.L.1929, to the effect that the land occupied by the structure "is also subject to the lien, if at the commencement of the work, * * * the land belonged to the person who caused said building" to be constructed,

no lien could attach upon the leasehold interest of Basic since Standard, the party at whose immediate instance the work was performed, had no interest in the land. We find no merit in this contention. In the first place sec. 3737 goes on to provide: "[B]ut if such person owned less than a fee simple estate in such land, then only his interest therein is subject to such lien." We may further point to sec. 3743, id., whereunder every building constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein shall be held to have been constructed at his instance, unless notice of nonresponsibility is given. Basic certainly had knowledge of the construction contemplated if the Basic-Standard agreement is to be given any effect whatsoever and therefore the buildings in law were constructed at Basic's request and knowledge. Construing this section, this court said in Gould v. Wise, 18 Nev. 253, 258, 3 P. 30, 31, "But the interest of the owner may be subjected to lien claims, notwithstanding the labor and materials have not been furnished at his instance, if, knowing that alterations or repairs are being made or are contemplated, he fail to give notice that he will not be responsible therefor, as provided in section nine of the act."

The primary judgment of lien foreclosure should therefore be affirmed.

## APPEAL NO. 3884

On February 17, 1955, the trial court entered an order for summary judgment which was based upon the Basic-Standard agreement of May 1, 1953, wherein Standard agreed to construct certain residential dwellings "* * * to be free and clear of any liens, claims, or encumbrances whatsoever, except the lease" and which provided that Standard should specifically perform that agreement by satisfaction and clearance of all liens and encumbrances as determined in the foreclosure judgment prior to the foreclosure sale, or in the event of

failure to render specific performance, a money judgment should be entered against Standard for $29,077.22, the total amount of the liens, together with certain costs, interest from February 11, 1954, and an attorneys' fee of twenty percent (20%) of the judgment.

Standard and Globe have asserted two grounds of invalidity of this particular summary judgment: First, that it is based upon an invalid primary judgment; and, Second, that there has been no violation of the Basic-Standard agreement because the improvements became the property of the United States of America free and clear of any liens, and from that argue that since governmental immunity attached to those improvements it would necessarily follow that such improvements were received by the Lessor free and clear of any liens and therefore there was no violation of the Basic-Standard agreement.

We see no logic in the argument that the governmental immunity can afford a defense against Standard's violation of its contract with Basic. This contract was capable of being either specifically enforced or its violation made subject to a money judgment. We are of the opinion that this judgment should be affirmed.

### APPEAL No. 3886

On April 11, 1955, Standard obtained a summary judgment against Globe Indemnity Company, which ordered Globe to satisfy the judgment against Standard to the extent of and in the amount of $30,294.50, together with costs and interest from January 31, 1955. Globe has appealed from that order.

It first contends that the judgment against it is invalid because it is based upon two previous invalid judgments. This contention falls in our affirmance of the judgments in Nos. 3875 and 3884. Globe next contends that Standard has no cause of action against it because Basic is not named as a party in Globe's bond whereunder it

obligated itself only "to pay over, make good, and reimburse" to Standard all loss and damage which Standard may sustain by reason of Long's default; that while the purchase order agreement contemplated that Long, as builder, should keep Standard free of liens and indemnify Standard against damage, there is no evidence that Standard was damaged and that it in fact received full performance by Long of the latter's contract. There is neither precedent nor logic in the contention that Basic's absence as a party from Globe's contract with Standard can serve to release Globe from its obligation on Long's default. The contention ignores the fact that Standard is under an immediate judgment either to clear the liens or pay the amount thereof. It ignores, too, Long's agreement to keep Standard free of all liens incurred in the performance of the contract and to indemnify Standard against any and all damages which might result or occur during said performance. This is based on the further contention that Basic, not a party to Globe's bond, is the only owner of an interest in the realty against which a lien could be and was in fact enforced. The Basic-Standard agreement does not support this contention. Under it Standard was granted, in addition to other benefits, (housing for its employees, one third of the profits from the operation, etc.), equal rights to purchase through an agent corporation, which would act exclusively for both Basic and Standard, and the right to construct additional dwellings by being solely responsible for the cost. Assignment of the agreement was provided for under strict terms and conditions. The agreement was recited to supersede all previous agreements between Basic and Standard "as to the use and occupancy" of the leased premises by Standard. Appellant Globe characterizes the Basic-Standard agreement as merely an operating agreement without creation of any property interest in Standard. Standard urges that the agreement does in fact create a lienable property interest in it and one which may be the subject of lien foreclosure, citing the general rule found in 57

C.J.S. 512, Mechanics' Liens, sec. 17, p. 512, as follows: "Such a lien may also attach to the interest of a sub-lessee, assignee, or other person holding under the lessee or to the interest of the holder of the lease with an option to purchase."

In Cary Hardware Company v. McCarty, 10 Colo. App. 200, 50 P. 744, 747, a somewhat similar use and occupancy agreement was construed to hold that a mechanics' lien could attach to the interest of a person holding under the lessee. The court said: "If, therefore, the smelting company, at the time of the erection of the improvements in question, held possession of the land upon which they were constructed under a lease, or by virtue of a license, where its authority was coupled with an interest, then it was the owner of the land, within the mechanic's lien act.

"There is no question but that Norton, the grantor of the smelting company, held under a lease, although he was given the right to occupy the five acres of surface ground for a specific purpose only, its use being restricted to the erection of 'such buildings and machinery thereon as may be necessary for treating said slag dump.' A *critical examination of the contract between Norton and Holden warrants the conclusion, in our opinion, that its legal effect was to vest in Holden the same rights, as to the use and occupancy of the premises described in the lease, as Norton himself had, subject only to its possible avoidance by the refusal of Norton's grantors to ratify it, which, by the terms of the lease, they might have done.* This appears also to have been the intent and purpose of the parties, so far as we can gather from the instrument itself. There is certainly ample ground to sustain this view, and in a case like the present it is the duty of the court to so hold. The laborers and material men, who contributed so largely to the improvement of the premises, adding great value thereto, by erecting costly buildings and putting expensive machinery thereon, should not be defeated of their right to a just compensation solely by a strained and

technical construction of the instrument under which possession was held." (Italics ours.)

▆▆▆▆▆

A fair appraisal of the Basic-Standard agreement would clearly show that the parties intended that Standard should be granted the same rights to the use and occupancy of the leased premises and that the agreement granted to Standard a proper lienable interest in the realty now the subject of foreclosure. The summary judgment against Globe must also be affirmed.

### APPEAL No. 3889

One question has been raised on the cross-appeal of Standard against Globe and concerns the right of the trial court to limit the amount of costs, interest and attorney's fees to the penal sum of $30,294.50. In this connection it will be noted that the combined total of principal, interest and costs as of the date of the judgment, for which Standard became liable was the sum of $31,081.63, and that in addition thereto attorney's fees as fixed by the trial court amounted to $6,188.62. Not only were the attorney's fees in excess of the amount of the penal sum but costs and interest exceeded the penal sum by $787.13.

▆▆▆▆▆

At one time neither costs nor interest were recoverable if they exceeded the penal sum but that rule has been changed. 2 Sedgwick On Damages, sec. 678, p. 1389. As a result counsel for Globe has conceded that it would be responsible for costs and interest even though such amounts exceed the penal sum of the bond. This is in effect, pro tanto, a confession of error, by reason whereof we need not pursue the matter further but simply modify the judgment so as to include the principal sum of $29,077.22, costs in the sum of $138.45 and interest in the sum of $1,865.96. That leaves the question of whether or not attorney's fees are recoverable.

Globe asserts that attorney's fees are strictly the creature of either statute or contract, cites Dixon v. Second Judicial District Court, 44 Nev. 98, 190 P. 352, and says that since the bond contains no provision for attorney's fees such fees cannot be recovered in the event they exceed the penal sum and further that even if there was such a provision the penal sum would necessarily limit the amount of recovery. It relies strongly upon Hartford Fire Insurance Company v. Casey, 196 Mo. App. 291, 191 S.W. 1072, which holds that notwithstanding a stipulation in a bond for the payment of attorney's fees, such fees although considered in the nature of damages could not be recovered because the penal sum fixed the limit of liability and that the obligee must stand the loss himself or look elsewhere.

Counsel for Standard, on the other hand, asserts that Hartford Fire Insurance Company v. Casey, supra, represents the older and less realistic approach to the subject, argues that sec. 3746 N.C.L. 1929[5] which provides for attorney's fees in a lien foreclosure action should be considered as a part of the bond, and counters with Hartford Accident and Indemnity Company v. Casassa, 301 Mass. 246, 16 N.E.2d 860, which is cited in the pocket part supplement to Volume 11 of Corpus Juris Secundum, Bonds, sec. 132, and which holds that in an action upon an indemnity agreement the obligee is entitled to recover interest, costs and legal expenses over and above the penal sum where there was such a provision therefor.

Authorities for or against the allowance or disallowance of attorney's fees when they exceed the penal sum in a bond are indeed limited. Prior to the publication of the 1955 supplement to Volume 11 of Corpus Juris Secundum, however, there was no question in the minds

---

[5]Section 3746 N.C.L. 1929 provides: "The court may also allow, as part of the costs, the moneys paid for filing and recording the lien and shall also allow to the prevailing party reasonable attorney's fees."

of the encyclopedia writers that counsel fees could not be recovered, for it is said in 11 Corpus Juris Secundum, sec. 132, p. 511, as follows: *"Attorney's fees.* A provision in a bond further obligating the makers to pay attorney's fees in case of suit has been held not to enlarge the measure of recovery beyond the penalty named." (Citing Chesley v. Reinhardt, Tex.Civ.App., 300 S.W. 973.)

Likewise there was no question that such fees could not be recovered when Hartford Fire Insurance Company v. Casey, supra, reaffirmed the settled law of Missouri. Similarly there was no question when the Supreme Court of California in Hartford Accident & Indemnity Co. v. Industrial Accident Commission, 216 Cal. 40, 13 P.2d 699, 703, first construed a stipulation for the payment of counsel fees to mean that such fees are recoverable, but only in the event the combined amounts of the award and the attorney's fee do not exceed the penal sum of the bond and then said: " 'Even where the bond stipulates that damages shall include attorney's fees, under the rule that a surety on a bond is not liable beyond the penalty named therein, the surety is not liable for attorney's fees in excess of the penalty named.' 50 Cor.Jur., p. 92, sec. 149. In the case of Hartford Fire Insurance Co. v. Casey, 196 Mo.App. 291, 191 S.W. 1072, 1076, the court ruled as follows: 'The general rule has always been that plaintiff cannot recover more than the penalty of the bond. Farrar v. Christy's Adm'rs. 24 Mo. 474; State ex rel. v. Woodward, 8 Mo. 353; State ex rel. v. Sandusky, 46 Mo. 381; Board of Education v. National Surety Co., 183 Mo. 166, 184, 82 S.W. 70; Showles v. Freeman, 81 Mo. 540. An attorney's fee is a part of the loss sustained by an obligee when compelled to sue on a bond. In other words, it partakes of the nature of the damages sustained, and the agreement to pay same makes it a part of such damages. But the bond does not provide for protection against damages beyond the amount of the penalty. As to such damages in excess of the penalty, the obligee must stand the loss

himself or at least look elsewhere than to the surety. Consequently when the attorney's fee, made a part of the damages by a clause to that effect in the bond, forms a part of the excess above the face of the bond, then the obligee must stand the loss of that, too, at least so far as the surety is concerned.' "

Under our view the particular item of attorney's fees. herein involved was the sum of $6,188.62, which was awarded to the lien claimants pursuant to our statute and became as much a part of the judgment as the principal sum itself and subject to the same limitation, namely, the limit of the penal amount of the bond.

From the foregoing, the court's judgment in favor of Standard and against Globe in the sum of $30,294.50, (the penal sum of the bond), must be modified so as to comprise the principal sum of the liens in the sum of $29,077.22, costs in the sum of $138.45, and interest in the sum of $1,865.96, (the last two items under respondent's confession of error), making an aggregate of $31,-081.63. As so modified, it should be affirmed.

IT IS, THEREFORE, ORDERED: The judgment in No. 3875 is affirmed with costs. The judgment in No. 3884 is affirmed with costs. The judgment in No. 3886 is affirmed with costs, subject to the modification of No. 3889, infra. In Standard's cross appeal against Globe, No. 3889, the judgment against Globe in the sum of $30,294.50 is modified by increasing the same to $31,-081.63 and, as modified, is affirmed, with costs in favor of Standard.

BADT and EATHER, JJ., concur.

(Merrill, C. J., being disqualified, the Governor designated Honorable Grant L. Bowen, Judge of the Second Judicial District Court, to act in his place.)