TRUSTEES OF THE PLUMBERS AND PIPEFITTERS UNION LOCAL 525 HEALTH AND WELFARE TRUST PLAN; AND TRUSTEES OF THE PLUMBERS AND PIPEFITTERS UNION LOCAL 525 PENSION PLAN, APPELLANTS, v. DEVELOPERS SURETY AND INDEMNITY COMPANY, RESPONDENT.

No. 40060

February 17, 2004                                          84 P.3d 59

---

*Schreck Brignone Godfrey* and *Andrew S. Brignone, Michael V. Infuso* and *Adam P. Segal,* Las Vegas, for Appellants.

*Alverson Taylor Mortensen Nelson & Sanders* and *David J. Mortensen* and *Christian Z. Smith,* Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

This case arises from a surety bond dispute involving union worker benefits. The district court denied the request of the union trustees (the Joint Trust) for attorney fees because the award would exceed the bond's penal limit. The district court reasoned that our decision in *Basic Refractories v. Bright*[2] precluded such recovery. The Joint Trust appeals, contending that *Basic Refractories* is distinguishable from the case at bar. We agree. In *Basic Refractories,* we determined that a surety could not be ordered to pay attorney fees that, in addition to the judgment, exceeded the bond amount when those fees were incurred in a separate action between the secured entity and a third party.

Here, the surety may be ordered to pay attorney fees even if a fees award, in conjunction with the judgment, would exceed the

[2]72 Nev. 183, 298 P.2d 810 (1956).

bond amount because the surety engaged in direct litigation over the bond. Therefore, we reverse the district court's order and remand this case for an attorney fees determination.

## FACTS AND PROCEDURAL HISTORY

The Joint Trust is a group of non-profit organizations formed to provide pension, health, and other benefits to the plumbers of Pipefitters Union Local No. 525 (Pipefitters). P & P Plumbing, a plumbing company employing union workers, entered into a contract with Pipefitters requiring P & P to make contributions to the Joint Trust for the employees' pension, health, and welfare benefits. Pursuant to the contract, P & P posted a bond with Developers Surety, an indemnity company, to protect the workers' interests in the event that P & P failed to make the requisite benefit contributions. The bond covered "all reasonable expense incurred by [Pipefitters] . . . in the collection of any of the sum due under the terms and provisions of said labor agreement," including accounting, bookkeeping, clerical, and professional fees related to collecting on the bond. The initial bond amount was for $5,000. On October 8, 1999, the Joint Trust and P & P, allegedly without Developers Surety's consent, raised the bond's value to $20,000.

P & P failed to pay the requisite employee contributions in the amount of $30,853.57 and filed bankruptcy. After the bankruptcy, Pahor Air Conditioning assumed some of P & P's general contractor projects and accounts receivable. However, P & P's general contractors refused to remit the accounts receivable until Pahor provided releases for the delinquent employee benefit contributions. The Joint Trust refused to issue the releases until it received payment for the benefit contributions. To resolve the problem, Pahor agreed to pay $10,853.57, the portion of P & P's delinquencies exceeding the bond's $20,000 value. In exchange, the Joint Trust promised to provide the releases and litigate on the bond.

On May 21, 2001, the Joint Trust filed a complaint against Developers Surety to recover the $20,000 bond amount. On June 19, 2001, the Joint Trust made an offer of judgment in the amount of $19,200, including fees and costs. Developers Surety rejected the offer and answered the complaint. The district court assigned the case to the mandatory, court-annexed arbitration program.

Before the arbitration hearing, the Joint Trust noticed the deposition of Roger Smith, Developers Surety's "Person Most Knowledgeable." Developers Surety unsuccessfully moved for an emergency protective order. Developers Surety also unsuccessfully challenged the arbitrator's decision to deny the motion. Allegedly, Developers Surety intentionally precluded the Joint Trust from obtaining any substantive testimony at the deposition.

While arbitration was still ongoing, the Joint Trust filed a motion for summary judgment with the district court to recover the bond's face amount.[3] Developers Surety filed an opposition/counter-motion for summary judgment. The trial court granted the Joint Trust's motion and entered judgment in its favor for $20,000, the bond's penal amount. The court denied Developers Surety's summary judgment motion.

The Joint Trust then requested attorney fees and costs on the following grounds: (1) as a prevailing party under NRS 18.010(2)(a); (2) for Developers Surety's alleged bad faith litigation under NRS 18.010(2)(b); and (3) for making an offer of judgment and later obtaining a more favorable judgment under NRS 17.115 and NRCP 68. The district court granted the Joint Trust's request for interest and costs, but refused to award attorney fees. The court declined to address the merits of the Joint Trust's recovery claims and stated that *Basic Refractories* precluded an attorney fees award above the bond's penal limit. This appeal followed.

## DISCUSSION

### Standard of review

Developers Surety contends that the district court properly applied the law and that we should review the district court's decision not to award attorney fees for abuse of discretion. We disagree.

While we review a district court's attorney fees award for abuse of discretion,[4] the district court in this case never addressed the merits of the Joint Trust's attorney fees claim. Instead, the district court essentially ruled that NRS 17.115, NRCP 68 and NRS 18.010 do not apply to surety bond disputes. This ruling involved a question of law, which we review de novo.[5]

### Basic Refractories

The Joint Trust argues that the district court erred in determining that *Basic Refractories* prohibited attorney fees because that case is distinguishable. We agree and conclude that in cases like the instant one, when the surety is directly involved in litigation

---

[3]Although NAR 4(E) prevents the parties to an ongoing arbitration proceeding from bringing non-dispositive motions before the district court, the court may still dispose of a case by hearing and ruling upon a motion for summary judgment. *U.S. Design & Constr. v. I.B.E.W. Local 357,* 118 Nev. 458, 464, 50 P.3d 170, 174 (2002).

[4]*Sandy Valley Assocs. v. Sky Ranch Estates,* 117 Nev. 948, 956, 35 P.3d 964, 969 (2001).

[5]*State, Bus. & Indus. v. Granite Constr.,* 118 Nev. 83, 86, 40 P.3d 423, 425 (2002).

over the bond, attorney fees are available under NRS 17.115, NRCP 68, NRS 18.010(2)(a), and NRS 18.010(2)(b).

In *Basic Refractories,* Standard Slag Company subcontracted with Long Construction Company for the construction of residential dwellings. Under the subcontract, Long promised to surrender the dwellings "free and clear" and posted a bond for fifty percent of the contract price. Globe Indemnity Company issued the bond. Long constructed the residential units, but failed to pay certain labor and material claims. Consequently, several lien claimants filed actions against Standard to foreclose on their liens.[6] The lien claimants obtained judgment against Standard in the amount of $29,077.22, $2,004.41 in costs and interest, and $6,188.62 in attorney fees.[7] Standard then obtained a judgment on its third-party complaint against Globe and recovered the bond's penal limit. After Globe admitted on appeal responsibility for costs and interest, even though these amounts exceeded the bond's penal sum, we increased Standard's award to include such costs and interest.[8] Nevertheless, we rejected Standard's claim on appeal that it was also entitled to recover the attorney fees that it owed on the lien claimants' judgment.[9]

Although *Basic Refractories* involved attorney fees that the secured entity was obligated to pay in a *third-party dispute,* the *Basic Refractories'* holding included broad language that arguably could apply to attorney fees that the secured party sustains in direct litigation with the surety:

> An attorney's fee is a part of the loss sustained by an obligee when compelled to sue on a bond. . . . [I]t partakes of the nature of the damages sustained, and the agreement to pay same makes it a part of such damages. But the bond does not provide for protection against damages beyond the amount of the penalty. As to such damages in excess of the penalty, the obligee must stand the loss himself or at least look elsewhere than to the surety.[10]

This language understandably led the district court to conclude that attorney fees were impermissible in the instant case. We therefore take this opportunity to expressly limit *Basic Refractories'* holding to the procedural posture of that case. If a secured entity becomes obligated to pay attorney fees in third-party litigation, the surety is not liable for these fees if they exceed the bond amount.

---

[6]*Basic Refractories,* 72 Nev. at 188-90, 298 P.2d at 812-13.

[7]*Id.* at 198, 298 P.2d at 817.

[8]*Id.* at 198-201, 298 P.2d at 817-19.

[9]*Id.* at 200-01, 298 P.2d at 818.

[10]*Id.*

When the secured entity incurs attorney fees in direct litigation with the surety over the bond, attorney fees may be awarded under NRS 17.115, NRCP 68, and NRS 18.010.

### (1) *NRS 17.115 and NRCP 68*

NRS 17.115(4)(d)(3) permits the district court to award attorney fees against a party who rejects an offer of judgment and later fails to obtain a more favorable judgment. Pursuant to NRCP 68(f)(2), the offeree who rejects an offer and later fails to obtain a more favorable judgment must pay the offeror such attorney fees as the district court allows. Here, the Joint Trust submitted an offer of judgment in the amount of $19,200 to Developers Surety, but Developers Surety rejected the offer. Subsequently, the district court awarded $20,000 to the Joint Trust. Because Developers Surety rejected the Joint Trust's offer and the Joint Trust later obtained a more favorable judgment, the district court could have awarded the Joint Trust attorney fees under NRS 17.115 and NRCP 68.

Under NRS 17.115(4)(d)(3), "[i]f *a party* who rejects an offer of judgment fails to obtain a more favorable judgment, the court . . . [m]ay order the *party* to pay to the party who made the offer . . . [r]easonable attorney's fees." (Emphasis added.) NRCP 68(f)(2) directs the *offeree* who rejects the offer to pay the offeror such attorney fees as the district court might award. "[W]ords in a statute should be given their plain meaning unless this violates the spirit of the act."[11] The plain language of NRS 17.115 and NRCP 68 refers to "a party," meaning any party, and an "offeree," meaning any offeree. Developers Surety falls within the purview of NRS 17.115 because the statutory language contains no exception for sureties. If the Legislature intended to create such an exception, it would have done so. Our interpretation is consistent with the spirit of NRS 17.115 and NRCP 68 because the Nevada Legislature aimed to promote settlement and avoid litigation.[12]

Also, precluding attorney fees recovery in surety bond disputes contradicts legislative intent because it removes the incentive to settle. By enacting NRS 17.115, the Legislature intended to "speed up cases in the courts."[13] The purpose of NRS 17.115 is to place

---

[11]*McKay v. Bd. of Supervisors,* 102 Nev. 644, 648, 730 P.2d 438, 441 (1986), *quoted in White v. Continental Ins. Co.,* 119 Nev. 114, 117, 65 P.3d 1090, 1091-92 (2003).

[12]*Matthews v. Collman,* 110 Nev. 940, 950, 878 P.2d 971, 978 (1994); *Fleischer v. August,* 103 Nev. 242, 245, 737 P.2d 518, 520 (1987).

[13]Hearing on A.B. 587 Before the Assembly Comm. on Judiciary, 56th Leg. (Nev., March 25, 1971) (statement of Assemblyman Howard F. McKissick).

the risk of loss on the offeree who fails to accept the offer, thus encouraging both offers and acceptance of offers.[14] Limiting attorney fees recovery to the bond's remaining penal limit when the secured party engages in direct litigation with the surety over the bond would decrease the surety's potential litigation loss. From an attorney fees standpoint, it would generally not matter whether the surety litigated the claim or settled before trial. Consequently, the surety would not be stimulated to make or accept settlement offers and this would attenuate Nevada's policy to encourage pretrial dispute resolution.

Limiting attorney fees in all surety bond disputes against the surety would not only remove the incentive to settle, it would create an incentive to litigate. Sureties that can invest at rates higher than the legal interest rate might prefer to litigate regardless of the litigation outcome. This result would contradict Nevada's policy to encourage pretrial settlement. Consequently, we conclude that NRS 17.115 and NRCP 68 apply to direct actions between the secured entity and the surety. Thus, the district court should have considered awarding attorney fees to the Joint Trust under these provisions.

### (2) NRS 18.010(2)(a)

The Joint Trust also argues that the district court should have granted its attorney fees request under NRS 18.010(2)(a) because it recovered $20,000. NRS 18.010(2)(a) authorizes the court to award attorney fees to a prevailing party who has recovered no more than $20,000. The amendments to NRS 18.010(2)(a) over the years support the Joint Trust's argument.

In 1957, one year after the *Basic Refractories* decision, NRS 18.010 authorized an attorney fees award to a prevailing party when the party had not sought recovery in excess of $3,000.[15] In 1967, the Legislature increased the prevailing party's permitted recovery to $10,000.[16] In 1985, the Legislature amended NRS 18.010 to authorize attorney fees awards when the prevailing party had recovered no more than $20,000.[17] While the Legislature may have been partially concerned with inflation,[18] the statute's 2003 amendment unambiguously reflects the Legislature's intent to liberalize attorney fee awards. In 2003, Senate Bill 250 added the

---

[14]*Matthews,* 110 Nev. at 950, 878 P.2d at 978.

[15]1957 Nev. Stat., ch. 91, § 1, at 129-30.

[16]1967 Nev. Stat., ch. 466, § 1, at 1254.

[17]1985 Nev. Stat., ch. 83, § 1, at 327.

[18]One dollar in 1860 corresponded to $2.68 in 1951, $3.02 in 1957, $3.61 in 1967, and $11.58 in 1985. *See The Value of a Dollar: Prices and Incomes in the United States 1860-1999,* at 2 (Scott Derks ed., 1999).

following language to NRS 18.010: "The court shall liberally construe the provisions of this paragraph in favor of awarding attorney's fees in *all* appropriate situations."[19] The statutory language is clear; it encourages the district court to award attorney fees and it makes no exemptions for sureties. The district court should have considered awarding attorney fees under NRS 18.010(2)(a).

### (3) *NRS 18.010(2)(b)*

The Joint Trust also asserts that the district court should have considered its attorney fees request under NRS 18.010(2)(b) because Developers Surety acted in bad faith by defending the claim without reasonable grounds and by unlawfully obstructing the Joint Trust's access to evidence.

Prior to 1985, NRS 18.010 did not contain the "bad faith" basis for attorney fees recovery.[20] In 1985, the Legislature authorized the district court to award attorney fees "[w]ithout regard to the recovery sought, when the court finds that the claim, counterclaim, cross-claim or third-party complaint or defense of the opposing party was brought without reasonable ground or to harass the prevailing party."[21] The concern with decreasing groundless litigation echoed in the 2003 amendment when the Legislature added the following language to NRS 18.010:

> It is the intent of the Legislature that the court award attorney's fees pursuant to this paragraph and impose sanctions pursuant to Rule 11 of the Nevada Rules of Civil Procedure in all appropriate situations to punish for and deter frivolous or vexatious claims and defenses because such claims and defenses overburden limited judicial resources, hinder the timely resolution of meritorious claims and increase the costs of engaging in business and providing professional services to the public.[22]

The Legislature's express policy of discouraging frivolous litigation applies when the surety is involved in direct bond litigation with the secured entity. Consequently, the district court should have

---

[19]S.B. 250, 72d Leg. (Nev. 2003) (emphasis added); 2003 Nev. Stat., ch. 508, § 153, at 3478.

[20]*See* Civil Practice Act of 1911 § 434, *reprinted in* Nev. Rev. Laws § 5376 (1912); 1951 Nev. Stat., ch. 54, § 1, at 59; 1957 Nev. Stat., ch. 91, § 1, at 129; 1967 Nev. Stat., ch. 466, § 1, at 1254; 1969 Nev. Stat., ch. 247, § 1, at 435; 1971 Nev. Stat., ch. 115, § 1, at 165; 1975 Nev. Stat., ch. 243, § 10, at 309; 1977 Nev. Stat., ch. 401, § 4, at 774.

[21]1985 Nev. Stat., ch. 83, § 1, at 327.

[22]S.B. 250, 72d Leg. (Nev. 2003); 2003 Nev. Stat., ch. 508, § 153, at 3478.

considered whether NRS 18.010(2)(b) warranted an attorney fees award.

We further note that when two or more claims exceed a surety bond's penal limits, the surety may initiate an interpleader proceeding under NRCP 22 to avoid exposure to double or multiple liability. The claims do not have to be identical or have a common origin.[23] The court has the discretion to approve the interpleader and permit the surety to deposit the bond's remaining penal limits with the court. The court may then discharge the surety from any further liability and equitably distribute the proceeds among the various claimants.

## CONCLUSION

We conclude that the Joint Trust is eligible to recover attorney fees under NRS 17.115, NRCP 68 or NRS 18.010.[24] Therefore, we reverse the district court's order and remand the case for an attorney fees determination.

MAUPIN, J., concurring in part and dissenting in part:

I concur in the result reached by the majority. I write separately to note my concern with the majority's speculations regarding a bonding company's investment strategies. There is no support in this record for the proposition that sureties might withhold settlement commitments based upon their abilities to invest reserved funds at a rate of return greater than the legal rate of interest.

---

[23]NRCP 22; *Rutherford v. Union Land and Cattle Co.,* 47 Nev. 21, 213 P. 1045 (1923).

[24]The issue of interest and costs is not before us because the lower court granted the Joint Trust's interest and costs request and Developers Surety has not challenged that decision.