[S. F. No. 14572.   In Bank.—July 20, 1932.]

HARTFORD ACCIDENT AND INDEMNITY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, HATTIE McGHEE ANSLEY et al., Respondents.

Jesse H. Steinhart and John J. Goldberg for Petitioner.

A. J. Townsend and Alfred C. Skaife for Respondents.

CURTIS, J.—The Pickering Lumber Company, at all the times herein mentioned, was a corporation organized under the laws of the state of Delaware, and duly authorized to transact business in this state, and during the same time the petitioner herein, the Hartford Accident and Indemnity Company, was a corporation organized under the laws of the state of Connecticut, duly authorized to become sole surety on bonds and undertakings in this state. On the fourteenth day of May, 1926, said Pickering Lumber Company, pursuant to section 29, subdivision (a) 2 of the Workmen's Compensation, Insurance and Safety Act of 1917, as an employer under said Compensation Act, secured the payment of compensation to its injured employees and to the dependents of its killed employees by securing from the Industrial Accident Commission a certificate of consent to self-insure, said certificate being issued on May 14, 1926, and the same remained in force and effect continuously from said last-named day to and including the seventeenth day of July, 1931, at which date it was revoked. As a prerequisite to the issuance to said Pickering Lumber Company of said certificate to

self-insure, the Industrial Accident Commission pursuant to the power given it by said section 29 (a) 2 of the Workmen's Compensation Act, required said Pickering Lumber Company to execute and deposit a surety bond with the treasurer of the state of California. The amount of said bond was fixed by the Industrial Accident Commission at $20,000. The form of said bond was prepared and furnished by the Industrial Accident Commission and was in the usual form then required by the Industrial Accident Commission in connection with the issuance of certificates of consent to self-insurance. Pursuant to said requirement of the Industrial Accident Commission, and in order to secure the issuance of said certificate of consent to self-insure, said Pickering Lumber Company, as principal, and said Hartford Accident and Indemnity Company, as surety, on the thirteenth day of May, 1926, executed and delivered to said Industrial Accident Commission a surety bond as required by said Commission as aforesaid. Said bond was deposited with the state treasurer, and thereupon the Industrial Accident Commission issued to the Pickering Lumber Company a certificate of consent to self-insure. Said bond remained in full force and effect continuously from its date to June 12, 1931. During the time said bond was in full force and effect, a large number of awards, some forty in number, were made by the Commission against said Pickering Lumber Company in favor either of injured employees of said company, or of dependents of killed employees of said company whose injuries arose out of and in the course of their employment by the Pickering Lumber Company, and all of said awards were covered by said bond.

On May 9, 1931, in the District Court of the United States for the Western Division of the Western District of Missouri, Geo. R. Hicks was appointed receiver of all the property and assets of the Pickering Lumber Company located in Missouri, and on May 12, 1931, in the District Court of the United States for the Southern Division of the Northern District of California, said Geo. R. Hicks was appointed ancillary receiver of all of the property and assets of said Pickering Lumber Company in the state of California. Said receiver and ancillary receiver after his said appointment stopped payment of all of said awards, and refused to make any payments of compensation out of

the property of the Pickering Lumber Company to any of said injured employees, or to the dependents of said deceased employees. At the time said receiver stopped payment on said awards, the total amount due thereon far exceeded the sum of $20,000, the amount of said bond. Whereupon the beneficiaries under said awards, as applicants, filed their petition before said Industrial Accident Commission for an order requiring the Hartford Accident and Indemnity Company, as surety on said bond, to pay or provide payment of the compensation remaining unpaid on account of said awards. The Hartford Accident and Indemnity Company appeared in said proceeding and contested the petition of said applicants. A hearing was had and at the conclusion thereof, the Commission made findings embodying the facts recited herein, and upon said findings made its order or award that the Hartford Accident and Indemnity Company forthwith pay the sum of $20,000 to the state compensation fund, and to the attorney for said applicants the further sum of $2,500 as attorney's fees; that upon the payment of said sum the Hartford Accident and Indemnity Company "shall be released from all liability" and "that upon receipt by said state compensation fund of said sum of $20,000, the said sum shall, on the order of the Industrial Accident Commission, be distributed to the applicants herein and to such other persons whose claims are covered by said bond as shall assert their claim prior to the distribution of said sum of $20,000 on the following basis:

"Compensation, including that due under section 9 (a) of the Workmen's Compensation Insurance and Safety Act of 1917, for the earliest week shall first be paid and thereafter compensation shall be paid for each succeeding week, or portion of a week until the full sum of $20,000 shall have been paid.

"Said payments shall be made only to applicants whose awards have become final and in the event that, pending the distribution of said moneys, petitions shall be filed, or shall be pending, to rehear or review any award, an amount sufficient to cover the amount of said award shall be held pending the decision on said rehearing or review, distribution of said retained sum to be made after such decision on the basis of payment above ordered, and in the meantime pay-

ments shall be made on any awards which shall have become final.''

The Hartford Accident and Indemnity Company asked for a rehearing of this order which was denied. It then instituted this original proceeding in this court for a review of said order and an annulment of said award.

█ It first contends that the Industrial Accident Commission has no jurisdiction to render an award against the surety on a self-insurer's bond. The jurisdiction of the Industrial Accident Commission is determined and fixed by section 21 of article XX of the Constitution of the state and the provisions of the Workmen's Compensation, Insurance and Safety Act (hereinafter referred to as the Workmen's Compensation Act). By the foregoing section of the Constitution, the legislature is vested with plenary power to create and enforce a complete system of workmen's compensation. It is expressly provided therein that such a system includes ''full provision for adequate insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage against liability in all of its aspects . . . [and] full provision for otherwise securing the payment of compensation''. In carrying out this grant of power the legislature has enacted the Workmen's Compensation Act, and by section 29 thereof has provided two ways or methods which may be followed by employers in securing the payment of compensation due under said act. One method requires the employer to insure and keep insured against such liability in one or more insurance carriers duly authorized to furnish compensation insurance in this state; the other method requires the employer to secure from the Industrial Accident Commission a certificate of consent to self-insure. This certificate is issued by the Commission under certain conditions, one of which provides for the giving of a bond in the discretion of the Commission and in an amount to be determined by the Commission. This bond is placed and kept on deposit with the state treasurer. That section 29 of the Workmen's Compensation Act is within the power of the legislature to enact under the terms of section 21 of article XX of the Constitution, we have no doubt. The first method of securing payment of compensation under said act is the one in common use, and no question is raised as to the power of the legis-

lature to provide therefor. The second method of securing compensation was undoubtedly enacted under that declaration in said section of the Constitution which, after providing that a complete system of workmen's compensation "includes full provision for adequate insurance coverage against liability to pay or furnish compensation," also provides that it includes "full provision for otherwise securing the payment of compensation". That the provisions of the act regulating a self-insurer employer and providing for the giving of a bond, are simply one method of "securing the payment of compensation" and, therefore, within the grant of power to the legislature to enact, we think it so clear as to require no further discussion.

By section 55 of the Workmen's Compensation Act, the Industrial Accident Commission is given jurisdiction of "all proceedings for the recovery of compensation, or concerning any right or liability arising out of or incidental thereto". There may be other provisions of this section of the act which might be construed to give the Commission jurisdiction over a proceeding instituted by an employee, or employees, to enforce payment against a surety on a self-insurer's bond. This portion of the section just quoted is sufficient for our present purpose. The proceeding instituted before the Commission against the petitioner herein was one to recover compensation due the employees and certain dependents of killed employees of the self-insurer employer from the surety upon the bond given by the said self-insurer employer to secure the payment of said compensation, and comes clearly within the terms of said section 55 quoted above. There can be no question of the jurisdiction of the Commission to entertain such a proceeding and to determine all issues arising therein and to render an award in accordance with the facts produced before it.

Petitioner complains that the granting of relief against it in the proceeding before the Industrial Accident Commission deprived it of legal and equitable rights to which it would otherwise be entitled. These rights petitioner claims are given it under sections 2845 and 2846 of the Civil Code and section 1050 of the Code of Civil Procedure. If petitioner is entitled to any rights under these sections of the code which it could not enforce before the Commission, it might be relegated to the courts for the purpose of enforcing

them. This result would not affect the jurisdiction of the Commission if the Constitution and statutes have conferred jurisdiction upon the Commission to determine the matter involved. However, if the Commission is vested with jurisdiction over any given subject matter, it has the power to hear and determine every issue raised by the parties in the controversy. (*Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.*, 177 Cal. 771 [171 Pac. 935]; *General Acc. etc. Corp.* v. *Industrial Acc. Com.*, 196 Cal. 179, 190 [237 Pac. 33].) In such cases the parties are not required to resort to the courts. (*General Acc. etc. Corp.* v. *Industrial Acc. Com.*, supra.)

Petitioner states that the point just discussed is merely preliminary to the further contention that there is nothing in the bond which indicates an intention that the surety therein is to be deprived of the statutory rights given under said three code sections. In this connection petitioner calls attention to the fact that there is nothing in the act that indicates that the bond of a self-insurer is to be other than the usual surety bond to which these code sections would apply. It is true that the provisions in the act relative to the form of the bond and its contents are extremely meager. In providing for the form of bond to be used by self-insurers, the Commission evidently followed as a guide the form of bond required of insurance carriers under the statutes of this state. (Stats. 1917, p. 292, amended Stats. 1919, p. 611.) It is contended that a bond in that form is inapplicable to the situation where a bond is required of a self-insurer employer. That it followed the form prescribed by statute for bonds required of insurance carriers is at least some evidence of its reasonableness and fairness. Petitioner has not pointed out to us any provision in the form of the bond which works an undue hardship upon the surety or upon any other persons. Its only claim is that it is deprived of certain rights given to sureties by the three sections of the code above mentioned. This claim, we think we have adequately answered. We might also refer to the fact that petitioner freely and voluntarily executed the bond as a further showing that the terms of the bond did not appear unreasonable to it at the time of its execution. After voluntarily executing the bond and accepting premiums thereunder for a period of something like

48

three years, petitioner is not in a very advantageous position to question the validity or binding effect of any of its provisions.

█ A further objection is made to the main award for the failure of the Commission to follow the terms of the bond in fixing the amount due thereon. The bond provides that the surety will pay the awards, in case the principal fails to do so within thirty days after they become final "to the State Compensation Insurance Fund, as trustee, for the beneficiaries thereof, at the present worth of such awards, commuted pursuant to the terms of Section 28 (d) of said [Workmen's Compensation] Act". The Commission failed to make such commutation. It did find, however, that the total amount due or to become due on thirty-one of said awards which had then become final commuted in compliance with the terms of said section 28 (d) far exceeded the sum of $20,000. In fact, the Commission found that the amount "Due Forthwith" (at the date of said award) was the sum of $22,637.98. It would have been a useless act on the part of the Commission to have commuted the present worth of the awards, for it is apparent from the findings of the Commission that the amount actually due at the time the award was made far exceeded the amount of the award. If there was an error on the part of the Commission in failing to formally commute the present worth of the awards, the petitioner was not prejudiced by such error.

█ Petitioner also complains of the method of distribution of the penal sum of the bond as provided in said award. The only persons entitled to participate in this distribution are those who have recovered or may recover awards before the Commission for injuries, or as dependents of the employees who were killed under circumstances entitling them to compensation. The present respondents, with the exception of the Industrial Accident Commission, comprise all claimants for compensation whose claims therefor were pending before the Commission at the time the proceeding now under review was finally determined. These claims with the possible exception of four had then all become final. As parties to said proceeding they are bound by the award and the method of its distribution as none of them has asked for any review thereof. Besides the award provides that each ap-

plicant upon receiving the *pro rata* amount due him of said $20,000 shall be required to give petitioner a full release of all claims against it. Petitioner is, therefore, fully protected against any and all claims of the respondents herein. ██ Petitioner appears apprehensive that other claimants for compensation, in addition to the said respondents, might proceed against it on its said bond, and to the extent that it should be compelled to pay their claims, in event they or any of them should prevail, the petitioner would be required to make payments under said bond beyond the maximum penalty. It is hardly probable, in view of the limited time within which under the Workmen's Compensation Act claims for compensation may be initiated before the Commission, that any further claims of that character will arise in the future. However, ample provision is made in the award of the Commission for the protection and payment of all claims of applicants which may be filed pending distribution, by the requirements that an amount sufficient to cover the probable amount to become due thereon be retained for the purpose of meeting the payment of such claims. Furthermore, the payment by the surety of the full amount of the bond to the State Compensation Insurance Fund to be disbursed under the direction of the Industrial Accident Commission would be a bar to any and all further claims against the surety.

██ The award, as stated above, was for $20,000, the full penal sum of the bond and $2,500, attorney's fees, in addition. Petitioner has advanced a number of reasons why the award as to the attorney's fees should be annulled. It will only be necessary for us to consider one of these grounds as we regard it well taken and sufficient to compel the modification of the award by striking therefrom the allowance of attorney's fees contained therein. The bond provides that "in no event shall the total liability of the surety exceed the penal amount herein stated in the sum of Twenty Thousand Dollars ($20,000.00)". It contains also the further provision that "The undersigned [principal and surety] are held and firmly bound for the payment of all legal costs, including reasonable attorney fees, incurred in all or any actions or proceedings taken to enforce payment of this bond, or payment of any award or judgment rendered against the undersigned surety, on account of the execution

by it of this bond.'' Petitioner contends that this paragraph of the bond is to be read and construed with the provision of the bond which fixes the total liability of the surety at a sum not exceeding $20,000, and that when these two provisions are read together they provide for attorney's fees only in case the combined amounts of the award and the attorney's fees do not exceed the penal sum of the bond. This seems to be the construction which courts have placed upon bonds containing provisions like or similar to the terms of the bond in this case.

"Even where the bond stipulates that damages shall include attorney's fees, under the rule that a surety on a bond is not liable beyond the penalty named therein, the surety is not liable for attorney's fees in excess of the penalty named.'' (50 Cor. Jur., p. 92, sec. 149.) In the case of *Hartford Fire Ins. Co.* v. *Casey,* 196 Mo. App. 291 [191 S. W. 1072, 1076], the court ruled as follows: "The general rule has always been that plaintiff cannot recover more than the penalty of the bond. (*Farrar* v. *Christy's Admr.,* 24 Mo. 474; *State ex rel.* v. *Woodward,* 8 Mo. 353; *State ex rel.* v. *Sandusky,* 46 Mo. 381; *Board of Education* v. *National Surety Co.,* 183 Mo. 166, 184 [82 S. W. 70]; *Showles* v. *Freeman,* 81 Mo. 540.) An attorney's fee is a part of the loss sustained by an obligee when compelled to sue on a bond. In other words, it partakes of the nature of the damages sustained, and the agreement to pay same makes it a part of such damages. But the bond does not provide for protection against damages beyond the amount of the penalty. As to such damages in excess of the penalty, the obligee must stand the loss himself or at least look elsewhere than to the surety. Consequently, when the attorney's fee, made a part of the damages by a clause to that effect in the bond, forms a part of the excess above the face of the bond, then the obligee must stand the loss of that too, at least so far as the surety is concerned.''

A similar ruling was made by the Court of Civil Appeals of Texas in the case of *Hill Mercantile Co. et al.* v. *Rotan Grocery Co.,* (Tex. Civ. App.) 127 S. W. 1080, 1082. It was there said: "There is more plausibility in the contention that the contract of guaranty limits liability to $7,000. It is a well-settled rule of law that contracts of guaranty and suretyship are to be strictly construed, and all reasonable

doubts resolved in favor of the guarantor or surety. It is distinctly stated in the first paragraph of the guaranty contract that the sum guaranteed is not to exceed $7,000, while in the last paragraph the guarantors agree to pay interest at the rate agreed upon between the Hill Mercantile Company and the Rotan Grocery Company, and to pay 10 per cent attorney's fees if the debt is sued upon or placed in the hands of an attorney for collection. It is nowhere stated in the contract that the agreement to pay interest and attorney's fees was intended to create a liability in addition to the $7,000 previously specified as the limit of the liability. . . . Hence we conclude that the court below erred in rendering judgment against appellants, J. A. Hill and R. N. Hill (two of the guarantors) in excess of $7,000, and the judgment will be reformed so as to limit their liability to $7,000, with interest thereon at the rate of 10 per cent per annum from February 4, 1909, the date of the original judgment.''

We are of the opinion that the above authorities announce the correct rule in fixing the liability of the surety on the bond here involved. There is nothing in this bond indicating that the liability to pay attorney's fees is to be in addition to the sum of $20,000 fixed by the bond as the total liability of the surety. It follows that the award in so far as it provides for an attorney's fee of $2,500 must be annulled.

There is nothing at all helpful for the respondents to be found in the case of *Texas Employer's Ins. Assn.* v. *Nunamaker et al.,* (Tex. Civ. App.) 278 S. W. 889, cited by respondents. In that case it was held in an action to enforce an award of the Industrial Accident Board that under the statutes of that state an allowance of attorney's fees in addition to the amount of the award was proper. While that action was against the surety on the bond of an employer, there is nothing in the reported decision which would indicate that the combined amount of the award and attorney's fees allowed exceeded the penal sum of the bond. We do not mean to hold in the instant case that in a proceeding against the surety on a self-insurer's bond to enforce an award of the Commission against the employer, an award for attorney's fees could not be upheld in any case. It is only where the amount of the award and the attorney's fees combined exceed the penal sum of the bond that the award of attorney's

fees to the extent that the combined award exceeds the amount of the bond is disallowed.

It is, therefore, ordered that the award of the Industrial Accident Commission against the petitioner is affirmed in all respects except as to that part thereof allowing attorney's fees of $2,500 in favor of the attorney for applicants, and that portion thereof allowing said attorney's fees is hereby annulled.

Langdon, J., Preston, J., Shenk, J., Waste, C. J., Tyler, J., *pro tem.*, and Seawell, J., concurred.