Filed 2/13/24  Gonzalez v. Hudson Insurance Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAZMIN GONZALEZ, Plaintiff and Respondent, v. HUDSON INSURANCE CO., Defendant and Appellant. | D080166, D081686 (Super. Ct. No. 37-2017-00042792-CU-CO-CTL) |

CONSOLIDATED APPEALS from a judgment and a postjudgment order of the Superior Court of San Diego County, James A. Mangione, Judge. Affirmed.

Law Offices of John L. Fallat, John L. Fallat, and Timothy J. Tomlin for Defendant and Appellant.

Auto Fraud Legal Center, Christopher P. Barry, and Michelle A. Cook for Plaintiff and Respondent.

# I

## INTRODUCTION

Under Vehicle Code section 11710, an auto dealer seeking a license to conduct business in the state must procure and file with the Department of Motor Vehicles a surety bond in the amount of $50,000, subject to a condition "that the [dealer] shall not practice any fraud or make any fraudulent representation which will cause a monetary loss" to a car buyer.  (Veh. Code, § 11710, subds. (a)–(b).)[1]  Section 11711 grants any person who suffers a loss from a dealer's fraud a cause of action against the dealer and the surety upon the dealer's bond, in an amount not to exceed the value of the vehicle sold.

Hudson Insurance Co. (Hudson) issued a section 11710 surety bond to auto dealer Sunny Hills Auto Sales, Inc. (Sunny Hills), which used fraudulent sales tactics to sell a used car to plaintiff Jazmin Gonzalez.  After Gonzalez discovered the fraud, she sued Sunny Hills and Hudson for violations of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.; CLRA) and section 11711, respectively.  Although Gonzalez succeeded on her CLRA cause of action, she was unable to collect from Sunny Hills on the ensuing judgment.  Therefore, she sought summary judgment against Hudson on the surety bond.  The trial court granted summary judgment for Gonzalez, entered judgment in her favor, and awarded her $264,440 in attorney's fees recoverable from Hudson.

Hudson appeals both the judgment and the postjudgment attorney's fee order.  However, Hudson does not articulate any cogent legal argument challenging the underlying judgment itself; instead, it focuses its attention solely on the attorney's fee order.  For that reason, we affirm the judgment.

---

[1]    Undesignated statutory references are to the Vehicle Code.

With respect to the attorney's fee order, we discern no error in the trial court's ruling. Because Gonzalez prevailed on her CLRA cause of action against Sunny Hills, she was statutorily entitled to recover her attorney's fees from Sunny Hills as an item of costs. (Civ. Code, § 1780, subd. (e); Code Civ. Proc., §§ 1032, subd. (b), 1033.5, subd. (a)(10)(B).) Hudson is also liable for these costs because its liability as surety is commensurate with that of its principal, Sunny Hills—even where, as here, the award of statutory costs exceeds the limit of the surety bond. (Civ. Code, § 2808.) Further, we discern no abuse of discretion in the trial court's calculation of the attorney's fees to which Gonzalez is entitled. Thus, we affirm the attorney's fee order.

II

BACKGROUND

A. *The Car Sale*

Hudson is a surety insurer that issued a $50,000 surety bond to auto dealer Sunny Hills pursuant to section 11710. The surety bond was in effect at all times relevant to the events described herein.

In April 2017, Gonzalez bought a used 2010 Mazda 3 from Sunny Hills for $7,995. She executed a retail installment sales contract enabling her to finance the purchase and pay for the car on an installment basis. At the time of the sale, Sunny Hills did not disclose to Gonzalez that the car previously sustained accident damage. On the contrary, it gave her a disclosure form indicating the car did not have frame damage, was not involved in a prior accident, and did not sustain prior collision damage. Sunny Hills later assigned its interests in the retail installment sales contract to Reliant Financial Corporation dba Gold Acceptance (Gold Acceptance).

3

B. *The Complaint and Arbitration*

In November 2017, Gonzalez filed the present action against Sunny Hills, Gold Acceptance, and Hudson in the Superior Court for the County of San Diego, alleging her car sustained prior accident damage and Sunny Hills misrepresented the condition of the car to her and failed to disclose its prior accident damage. She asserted four causes of action against Sunny Hills and Gold Acceptance for violations of the CLRA, violations of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), fraud and deceit, and negligent misrepresentation. She asserted a fifth cause of action against Hudson under section 11711.

Hudson answered the complaint with a general denial. It asserted 16 affirmative defenses in its answer, but did not identify exoneration of the surety bond as one of its affirmative defenses.

In August 2018, upon the motion of Sunny Hills and Gold Acceptance, the trial court compelled the case into arbitration with respect to Gonzalez, Sunny Hills, and Gold Acceptance pursuant to an arbitration clause contained in the retail installment sales contract. The court stayed the case as to Hudson, pending completion of the arbitration.

On November 26, 2019, after an evidentiary hearing, the arbitrator issued a final award in favor of Gonzalez and against Sunny Hills and Gold Acceptance on all causes of action including the CLRA claim. The arbitrator found the car sustained prior accident damage before the sale, Sunny Hills knowingly misrepresented the condition of the car to Gonzalez, and Sunny Hills failed to disclose the prior accident damage to her. The arbitrator awarded Gonzalez $8,748.28 in compensatory damages recoverable from Sunny Hills and Gold Acceptance, $5,000 in punitive damages recoverable from Sunny Hills, $120,581 in attorney's fees recoverable from Sunny Hills

4

under the CLRA, and $15,253.62 in additional costs recoverable from Sunny Hills and Gold Acceptance. According to Gonzalez, Sunny Hills and Gold Acceptance disappeared after the arbitration, leaving the arbitration award unsatisfied.

On August 26, 2020, Gonzalez petitioned the trial court to confirm the arbitration award and enter judgment in her favor. On November 19, 2020, the court granted the petition and entered judgment for Gonzalez and against Sunny Hills and Gold Acceptance.

C. *The Interpleader Action*

In June 2020, a few months before the confirmation of the arbitration award, an individual named Ladonna McNeil filed a civil action against Sunny Hills and Hudson in the Superior Court for the County of Los Angeles, *McNeil v. Sunny Hills Auto. Inc., et al.*, No. 19STLC07639 (hereafter, the Interpleader Action). Like Gonzalez, McNeil alleged that Sunny Hills sold her a used car and failed to disclose the car's prior accident damage. She likewise asserted a claim against Hudson under section 11711.

In July 2020, Hudson answered McNeil's complaint and filed a verified cross-complaint in interpleader naming both Gonzalez and McNeil as cross-defendants. Hudson also deposited $50,000—the amount of the surety bond—with the court overseeing the Interpleader Action.

On November 12, 2020, the court in the Interpleader Action discharged Hudson from liability and exonerated the bond.[2] In its discharge and exoneration order, the court noted that "all that [was] before [the] [c]ourt [was] the bond, not the claims related to it, nor any other claims against Hudson." The court also stated that its ruling did "not include any

---

[2]     We deny Gonzalez's request for judicial notice of Black's Law Dictionary's definition of the word, "exonerate," which is not necessary to the disposition of the appeal.

5

independent cause of action which Jazmin Gonzalez <u>may</u> have against Hudson which is not based on Hudson's contractual obligation on the surety bond."

D. *The Judgment and Attorney's Fee Order*

After the trial court confirmed the arbitration award against Sunny Hills and Gold Acceptance, Gonzalez and Hudson filed competing motions for summary judgment or summary adjudication.

In its motion, Hudson argued that its deposit of the bond funds in the Interpleader Action exonerated it from liability and precluded Gonzalez from recovering damages from the surety bond in the present action. In her motion, Gonzalez agreed with Hudson that its deposit of bond funds in the Interpleader Action barred an award of *damages* on the surety bond. But she argued Hudson could still be found *liable* on the section 11711 cause of action—a finding that would thereafter entitle her to seek fees and costs from Hudson as a prevailing litigant. On the issue of liability, she argued Hudson's deposit of the funds in the Interpleader Action constituted an admission of liability and the arbitration award further evidenced Hudson's liability to her on her section 11711 claim. The trial court granted Gonzalez's motion, denied Hudson's motion, and entered judgment for Gonzalez.

After the entry of judgment, Gonzalez filed a motion for attorney's fees against Hudson and a memorandum of costs. She sought attorney's fees from Hudson on grounds that she had prevailed on her CLRA cause of action against Sunny Hills, an award of attorney's fees to a prevailing plaintiff is mandatory under the CLRA, and Hudson's liability as a surety was commensurate with the liability of its principal, Sunny Hills. The trial court awarded Gonzalez $120,581 in arbitration-related attorney's fees and

6

$143,859 in post-arbitration attorney's fees, and found Hudson was liable for the entire $264,440 fee award.

Hudson appeals both the judgment (in appeal D080166) and the postjudgment attorney's fee order (in appeal D081686).[3]

III

DISCUSSION

A. *Auto Dealer Suretyship Principles*

"A surety is 'one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor.' [Citation.] A surety bond is a ' "written instrument executed by the principal and surety in which the surety agrees to answer for the debt, default, or miscarriage of the principal." ' [Citation.] In suretyship, the risk of loss remains with the principal, while the surety merely lends its credit so as to guarantee payment or performance in the event that the principal defaults. [Citation.] In the absence of default, the surety has no obligation." (*Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 38.)

Section 11710 requires auto dealers to obtain a surety bond for the protection of the consuming public in order to receive a dealer's license necessary to conduct business in the state. Section 11710 provides, in relevant part, that "[b]efore any dealer's ... license is issued or renewed by the [D]epartment [of Motor Vehicles] ... the applicant shall procure and file with the [D]epartment a bond executed by an admitted surety insurer, approved

---

3    On Hudson's request, we consolidate cases D080166 and D081686. All documents will be filed under D080166. We also grant Gonzalez's request for judicial notice of a modified version of the attorney's fee order. (Evid. Code, § 452, subds. (c)–(d).) We deny Hudson's request for judicial notice of its notice of appeal and its notice designating the record for case D081686, as those documents are already included in the appellate record for case D081686.

7

as to form by the Attorney General, and conditioned that the applicant shall not practice any fraud or make any fraudulent representation which will cause a monetary loss to a purchaser, seller, financing agency, or governmental agency. [¶] ... A dealer's bond shall be in the amount of fifty thousand dollars ($50,000) ...."  (§§ 290, 11710, subds. (a)–(b).)

Section 11711 states, in pertinent part, that "[i]f any person ... shall suffer any loss or damage by reason of any fraud practiced on him or fraudulent representation made to him by a licensed dealer ... then any such person shall have a right of action against such dealer ... and the surety upon the dealer's bond, in an amount not to exceed the value of the vehicle purchased from ... the dealer."  (§ 11711, subd. (a).)

"The 'dominant purpose' of California's statutory car dealer licensing scheme is ... the protection of car buyers from irresponsible or unscrupulous dealers."  (*Wald v. TruSpeed Motorcars, LLC* (2010) 184 Cal.App.4th 378, 381, italics omitted; see *Merrill v. Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 ["Looking to the entire statutory scheme governing the licensing of automobile dealers (Veh. Code, div. 5, ch. 4, art. 1) we observe that the primary concern therein manifested is that the public be protected from unscrupulous and irresponsible persons in the sale of vehicles subject to registration under the code."].)

B. *Summary Judgment*

The preliminary issue we must tackle in this appeal is to determine whether the trial court erred when it granted summary judgment for Gonzalez on her cause of action against Hudson under section 11711, denied Hudson's motion for summary judgment on the same claim, and entered judgment for Gonzalez.  Although this issue appears complex at first blush, Hudson has simplified the analysis for us considerably by failing to raise any

8

arguments in its opening brief specifically attacking the court's finding that Hudson was liable to Gonzalez or its related summary judgment rulings. Instead, Hudson devotes the entirety of its opening brief to challenging the validity of the postjudgment award of attorney's fees to Gonzalez.

" 'To prevail on appeal, an appellant must establish both error and prejudice from that error. [Citation.] In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. ... [W]e may disregard conclusory arguments that are not supported by pertinent legal authority.' " (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597; see also *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146.)

By failing to explicitly challenge the trial court's finding that Hudson was liable on the bond or the court's summary judgment orders in its opening brief, Hudson has forfeited any argument that the court erred when it granted summary judgment for Gonzalez, denied summary judgment for Hudson, or entered judgment for Gonzalez.[4] For that reason, we must affirm the judgment of the trial court. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment"].)

---

[4] In its reply brief, Hudson asserts for the first time on appeal that the court rulings from the Interpleader Action compelled a summary judgment ruling in favor of Hudson in the present case based on principles of claim preclusion and issue preclusion. We do not consider arguments raised for the first time in a reply brief. (See *Crawley v. Alameda County Waste Management Authority* (2015) 243 Cal.App.4th 396, 403, fn. 4; *Ko v. Maxim Healthcare Services, Inc.* (2020) 58 Cal.App.5th 1144, 1147, fn. 3.)

9

C. *Attorney's Fee Order*

    1. *The Trial Court Did Not Err in Holding Hudson Liable for the Attorney's Fee Award*

We turn now to the principal issue in this appeal—that is, whether it was proper for the trial court to issue *any* attorney's fee award against Hudson, and if so, whether the court erred when it made Hudson liable for attorney's fees in an amount that exceeded the liability limitation of the surety bond Hudson issued to Sunny Hills. We follow the precedents set forth in *Harris v. Northwestern National Ins. Co.* (1992) 6 Cal.App.4th 1061 (*Harris*), *Pierce v. Western Surety Co.* (2012) 207 Cal.App.4th 83 (*Pierce*), and *Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734 (*Karton*)—persuasive authorities that lead us to conclude the trial court did not err when it issued an attorney's fee award in favor of Gonzalez and against Hudson in an amount exceeding the surety bond limitation.

In *Harris*, a surety issued a $10,000 surety bond to a notary. (*Harris, supra*, 6 Cal.App.4th at p. 1063.) The notary negligently acknowledged a forged signature on a grant deed to real property, causing harm to the true owner of the property and a lender who loaned money to the forgers in reliance on the forged signature. (*Id.* at pp. 1063–1064.) In a subsequent lawsuit involving all of the parties, the trial court found the forgers committed fraud, the notary was negligent, and the $10,000 surety bond should be divided evenly between the true property owner and the lender. (*Id.* at p. 1064.) Additionally, the court issued an award of nearly $6,000 in costs to the owner and lender as prevailing parties—a cost award for which the notary and surety were both liable. (*Ibid.*) The surety moved to tax the costs imposed against it, arguing that costs may not be awarded against a surety if the surety's overall liability would exceed the surety bond limitation.

10

(*Ibid.*) The trial court denied the surety's motion to tax and the *Harris* court affirmed. (*Id.* at pp. 1064, 1068.)

The *Harris* court determined the prevailing parties' "entitlement to costs against [the surety was] evident," even though it caused the surety's aggregate liability to exceed the surety bond limitation, because Code of Civil Procedure section 1032, subdivision (b) provides for a mandatory award of costs to a prevailing party, as follows, " 'Except as otherwise expressly provided by a statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding.' " (*Harris, supra*, 6 Cal.App.4th at pp. 1064–1065.) In seeking to evade liability for the cost award, the surety argued that Code of Civil Procedure section 996.470 prohibited a cost award against a surety in excess of the bond limitation. (*Harris,* at p. 1065.) That statute states, "Notwithstanding any other statute ... the aggregate liability of a surety to all persons for all breaches of the condition of a bond is limited to the amount of the bond." (Code Civ. Proc., § 996.470, subd. (a).) But the *Harris* court rejected this argument. It reasoned that Code of Civil Procedure section 996.470 "refers only to liability for 'breaches of the condition of the bond.' *It does not limit liabilities of a surety which are imposed by statute rather than for breach of the condition of the bond. ...* [¶] . . . [¶] The obligation of [the surety] to pay costs [was] imposed by Code of Civil Procedure section 1032 based upon [the surety's] status as a party litigant, not for breach of the condition of the bond." (*Harris*, at pp. 1065–1066, italics added.)

The *Pierce* case involved facts nearly identical to the facts of the present case. In *Pierce*, a surety issued a $50,000 surety bond to an auto dealer under section 11711—the same statute implicated here. (*Pierce, supra*, 207 Cal.App.4th at p. 86.) Like Sunny Hills, the dealer sold a used car

11

to a buyer without disclosing the car's prior accident damage. (*Id.* at p. 87.) The buyer brought various claims against the dealer, including a CLRA claim, and also made a claim against the surety on the surety bond. (*Id.* at pp. 87–88.) The buyer took a default judgment against the dealer, which had gone out of business, and settled with the surety for $10,000, excluding attorney's fees and costs. (*Id.* at p. 87.) The trial court then found the surety was liable for the buyer's attorney's fees, given that the buyer was entitled to his attorney's fees as the prevailing party on the CLRA claim. (*Id.* at pp. 87–88.) The *Pierce* court affirmed the attorney's fee award. (*Id.* at p. 87.)

Preliminarily, the *Pierce* court concluded that section 11711 itself did not authorize the award of attorney's fees. (*Pierce, supra*, 207 Cal.App.4th at p. 88.) "Since section 11711 does not include an attorney fees provision, the prevailing litigant is not entitled to attorney fees by reason of that particular statute." (*Ibid.*) However, the *Pierce* court observed that "section 11711 [was] not the only applicable statute under the[] circumstances." (*Ibid.*) "As the issuer of the motor vehicle dealer bond, [the surety was] subject to general surety law," including Civil Code section 2808, which "provides that '[w]here one assumes liability as surety upon a conditional obligation, his liability is commensurate with that of the principal ... .' " (*Pierce*, at pp. 88–89.)

In *Pierce*, the dealer (the principal) was liable to the buyer for his attorney's fees because the buyer succeeded on his claim against the dealer for violations of the CLRA, a statute that includes a mandatory attorney's fee provision for a prevailing plaintiff. (*Pierce, supra*, 207 Cal.App.4th at pp. 91–92, citing Civ. Code, § 1780, subd. (e).) Those attorney's fees were recoverable from the dealer as an item of costs. (Code Civ. Proc., §§ 1032, subd. (b), 1033.5, subd. (a)(10).) Further, as the court explained, "fraudulent

12

representations are among the prohibited acts set forth" in the CLRA, so "CLRA violations can fall within the terms of a section 11711 bond." (*Pierce*, at pp. 91–92.) Because the surety's liability was commensurate with that of the dealer, and the dealer's fraudulent conduct both constituted a violation of the CLRA and fell within the conduct secured by the surety bond, the court concluded the surety was "liable for attorney fees that [could] be awarded to [the buyer] as the prevailing plaintiff under the CLRA." (*Id.* at p. 92; see *id.* at p. 93 ["a surety that issues a bond pursuant to section 11711 is subject to general surety law. Under Civil Code section 2808, a surety's liability is commensurate with that of the principal within the express terms of the bond and any applicable statutes. Thus, if the principal would have been liable for attorney fees based on conduct secured by the bond, the surety is liable for such fees."].)[5]

*Karton, supra*, 61 Cal.App.5th 734, involved a dispute between two homeowners and their unlicensed home remodeling contractor about overpayments the homeowners made to the contractor. The homeowners brought several claims against the contractor and sued a surety that issued a $12,500 construction bond to the contractor. (*Id.* at p. 739.) After a bench trial, the trial court sided with the homeowners and awarded them more than $100,000 in damages against the contractor and $12,500 against the surety. (*Id.* at pp. 739–740.) Thereafter, it ordered the contractor to pay the

_____

[5]    The *Pierce* court affirmed an attorney's fee award in an amount not to exceed the remaining balance on the surety bond, whereas the trial court in the current case issued a fee award that *did* exceed the balance of the surety bond. (*Pierce, supra*, 207 Cal.App.4th at p. 87.) The *Pierce* court's affirmance of the more limited fee award should not be construed as an implicit finding that fee awards can never exceed the surety bond amount. The car buyer in *Pierce* did not appeal the attorney's fee award. (*Id.* at p. 93, fn. 3.) Therefore, the *Pierce* court did not have jurisdiction to consider whether a larger attorney's fee award could be appropriate. (*Ibid.*)

homeowners $90,000 in attorney's fees under Code of Civil Procedure section 1029.8, which provides for an attorney's fee award against any unlicensed person whose work injures another person. (*Karton*, at pp. 740, 743.) However, the trial court found there was "no statutory or contractual basis for a recovery of attorney fees against" the surety. (*Id.* at p. 743.)

On appeal, the *Karton* court determined the trial court erred in finding that the surety could not be held liable for the $90,000 attorney's fee award. (*Karton, supra*, 61 Cal.App.5th at pp. 750–751.) According to the *Karton* court, the *Pierce* decision "mandate[d] victory for the [homeowners] against [the surety], as follows. A prevailing party is entitled to costs incurred in pursuing the claim. (Code Civ. Proc., § 1032, subd. (b).) When authorized by statute, attorney fees are allowable as costs. (Code Civ. Proc., § 1033.5, subd. (a)(10).) Under Civil Code section 2808, a surety's liability is commensurate with that of the principal within the express terms of the bond and of pertinent statutes. If the principal would have been liable for attorney fees based on conduct secured by the bond, the surety also is liable for the attorney fees as a cost item." (*Karton, supra*, 61 Cal.App.5th at p. 752.)

Applying these legal principles to the facts of the case, the *Karton* court determined that the surety was liable for the homeowners' attorney's fees because the surety's liability was "commensurate with that of its principal [the contractor]. By operation of section 1029.8 of the Code of Civil Procedure, [*the contractor*] [was] liable to the [homeowners] for reasonable attorney fees of $90,000 .... Under *Pierce*, then, so too [was] [*the surety*] liable to the [homeowners] for reasonable attorney fees of $90,000 as a cost item." (*Karton, supra*, 61 Cal.App.5th at p. 752.) Further, relying on *Harris*, the *Karton* court concluded the surety could be liable for the full $90,000 attorney's fee award, even though it exceeded the amount of the $12,500

14

bond, because the "attorney fee qualifie[d] as a cost," and the surety's "obligation to pay *costs* ... [was] not limited by the amount of its bond." (*Karton*, at p. 753.)

These principles compel us to affirm the trial court's adjudication that Hudson is liable for Gonzalez's attorney's fees. By statute, a prevailing party is entitled to recover costs. (Code Civ. Proc., § 1032.) Allowable costs include attorney's fees when authorized by contract, statute, or law. (*Id.*, § 1033.5, subd. (a)(10).) Here, a statute (the CLRA) mandates an attorney's fee award to a prevailing plaintiff like Gonzalez. (Civ. Code, § 1780; *Pierce, supra*, 207 Cal.App.4th at pp. 91–92.) Thus, Sunny Hills is liable for Gonzalez's attorney's fees based on Sunny Hills' CLRA violation—conduct that is also secured by the surety bond. Hudson's liability as a surety is commensurate with that of its principal, Sunny Hills. (Civ. Code, § 2808; *Karton, supra*, 61 Cal.App.5th at p. 751; *Pierce*, at pp. 92–93.) Because *Sunny Hills* is liable for Gonzalez's attorney's fees as an item of allowable costs, *Hudson* is likewise responsible for the attorney's fees as a cost of the litigation. (*Karton*, at p. 752; *Pierce,* at p. 92.) Thus, the trial court did not err in finding Hudson liable for the attorney's fee award as an item of allowable costs.

Hudson presents several arguments why it should not be held liable for the attorney's fee award, but its arguments are not persuasive. At the outset, Hudson argues it cannot be liable for any of Gonzalez's attorney's fees because section 11711 does not expressly authorize a grant of attorney's fees and the statute's legislative history does not show that the Legislature intended for a section 11711 plaintiff to recover her attorney's fees. We can easily dispense with this argument because we—and the authorities described herein—do not rely on section 11711 as the basis for the attorney's fee award. As the *Pierce* court stated, the "attorney fees are not awarded

15

under section 11711.  Rather, the award is under the CLRA," and the surety's obligation to pay the fees as an item of costs arises from the fact the surety's liability is commensurate with the liability of its principal.  (*Pierce, supra*, 207 Cal.App.4th at p. 92.)  Further, as the *Pierce* court correctly observed, "section 11711 does not provide for attorney fees, [but] it does not prohibit an award of attorney fees either."  (*Ibid.*)

Next, Hudson argues an attorney's fee award against a surety is improper where, as here, the surety's combined liability for damages and attorney's fees exceeds the amount of the surety bond.  In support of this contention, Hudson relies on *Hartford Accident & Indemnity Co. v. Industrial Accident Com.* (1932) 216 Cal. 40 (*Hartford*) and *Lawrence Tractor Co. v. Carlisle Ins. Co.* (1988) 202 Cal.App.3d 949 (*Lawrence*).  In both cases, surety bonds stated (either directly or by incorporating language from another contract) that a surety could be held liable for a claimant's attorney's fees.  (*Hartford*, at pp. 49–50; *Lawrence*, at pp. 953–955.)  And in each case, the court interpreted the language of the surety bond at issue to mean that a surety could be liable for a claimant's attorney's fees, but only up to the amount of the bond.  (*Hartford*, at p. 51; *Lawrence*, at p. 954.)

The *Hartford* and *Lawrence* decisions do not assist Hudson.  As the *Karton* court persuasively explained, the so-called  "*Hartford* rule is consistent with [a surety's] obligation to pay *costs* that are not limited by the amount of its bond," and attorney's fees can qualify as costs recoverable by a prevailing litigant when provided for by a statute like the CLRA.  (*Karton, supra*, 61 Cal.App.5th at p. 753.)  In short, " '[a]s a losing party litigant, [a surety] is properly subjected to costs in addition to the amount of the bond.' " (*Pilimai v. Farmers Ins. Exchange Co.* (2006) 39 Cal.4th 133, 145; see *Harris, supra*, 6 Cal.App.4th at p. 1063 [a surety can "be required to pay costs in

16

excess of the amount of its bond"].)  Thus, the court did not err by virtue of the fact it awarded attorney's fees exceeding the amount of the surety bond.

Hudson also challenges the attorney's fee award to the extent it holds Hudson liable for attorney's fees Gonzalez incurred before Sunny Hills' liability was legally fixed—which, according to Hudson, occurred on November 19, 2020, when the trial court confirmed the arbitration award and entered judgment against Sunny Hills.  As support for this proposition, Hudson relies on *Schmitt v. Insurance Co. of North America* (1991) 230 Cal.App.3d 245.  The *Schmitt* decision is inapposite.  In *Schmitt*, our court held that a surety has no legal obligation to pay under a surety bond until the liability of its principal is fixed; therefore, a surety's denial of liability before the principal's liability is established does not give rise to a cause of action against the surety for breach of the covenant of good faith and fair dealing. (*Id.* at p. 258.)  *Schmitt* did not address or purport to limit the scope of statutory costs for which a surety may be responsible after the principal's legal obligation becomes fixed.  Thus, *Schmitt* does not stand for the proposition that a surety may only be held liable for costs a prevailing litigant incurs after the liability of the principal is legally established.

Finally, Hudson makes a variety of policy arguments in support of its contention that sureties should not be held liable for a claimant's litigation costs, particularly attorney's fees.  Specifically, it argues that the uncertainty surrounding potential cost awards causes sureties to impose higher surety premiums on auto dealers, which in turn pass those higher premiums onto car buyers.  Hudson also argues it is unfair to saddle a surety with costs because a surety is not a "culpable party," and the threat of liability for costs creates a conundrum for a surety ensnared in litigation—should the surety simply settle with a claimant early on to evade cost exposure or duke it out

17

alongside the auto dealer against the claimant?  Gonzalez presents policy arguments cutting the other way.  She claims competent attorneys are more likely to pursue litigation on behalf of defrauded car buyers if they know costs (possibly including attorney's fees) may be recoverable from sureties, thereby advancing the overall goal of the statutory car dealer licensing scheme.  She also argues that, to the extent a surety's cost exposure encourages the surety to settle or interplead funds early in litigation, defrauded car buyers and the broader public will benefit from an early resolution to car buyers' claims.

We need not assess the relative strengths and weaknesses of the parties' policy arguments.  Whatever the merits of these dueling policy arguments may be, they are better addressed to the Legislature, the government branch responsible for enacting legislation concerning the auto dealer licensing system, surety bond litigation, and prevailing litigant costs. (*Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 909–910, [" 'Crafting statutes to conform with policy considerations is a job for the Legislature, not the courts; our role is to interpret statutes, not to write them.' "].)  Our task is to determine whether, under the statutory framework as it is written, the trial court erred in issuing an attorney's fee award in favor of Gonzalez and against Hudson.  For the reasons previously discussed, we conclude the trial court did not err.

2. *The Trial Court Did Not Abuse its Discretion When Calculating the Attorney's Fee Award*

In addition to challenging its liability for Gonzalez's attorney's fees, Hudson argues that the trial court abused its discretion when calculating the amount of reasonable attorney's fees to which Gonzalez was entitled.

The arbitrator and the trial court both found that Hudson was liable for $120,581 in attorney's fees Gonzalez incurred in the arbitration proceeding. Hudson does not challenge this portion of the fee award.  The court also found

18

Hudson was liable for $143,859 in attorney's fees Gonzalez incurred after the arbitration, which the court determined by calculating a lodestar of $95,906 and then adding a 0.5 multiplier ($47,953). The court reasoned a 0.5 multiplier was "appropriate given the contingent nature of th[e] case, the skill demonstrated by [Gonzalez's] counsel, and the novelty of the case's procedural posture." On appeal, Hudson does not challenge the court's calculation of the lodestar for the post-arbitration fees, but it does challenge the court's application of a 0.5 multiplier to the lodestar.[6]

"In determining the amount of reasonable attorney fees to be awarded under a statutory attorney fees provision, the trial court begins by calculating the ' "lodestar" ' amount. [Citations.] The 'lodestar' is 'the number of hours reasonably expended multiplied by the reasonable hourly rate.' " (*Kennedy Commission v. City of Huntington Beach* (2023) 91 Cal.App.5th 461, 465.) " 'Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent

_____

[6] In passing, Hudson asserts—without citation to the appellate record or supporting authority—that the lodestar figure "includ[es] ... counsel's time spent in appearing" in the Interpleader Action, and claims the "[t]ime spent by Gonzalez' [sic] counsel in the interpleader [sic] should not be charged against Hudson as the interpleading party." Insofar as Hudson purports to challenge the trial court's calculation of the lodestar, and its determination of the hours reasonably expended, Hudson has forfeited its contention by failing to support its argument with citations to the record or legal authorities. (See *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1071 (*LNSU*) ["where, as here, the appellants' opening brief makes contentions unsupported by proper record citations or cogent legal arguments, we may treat the contentions as forfeited"]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 (*Nwosu*) [" '[i]f a party fails to support an argument with the necessary citations to the record, ... the argument [will be] deemed to have been waived' "].)

19

risk presented.' " (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 489; see *Yes in My Back Yard v. City of Culver City* (2023) 96 Cal.App.5th 1103, 1122 (*Culver City*) ["Factors that the court may consider in adjusting the lodestar include '(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award.' "].) "However, ' "[t]here is no hard-and-fast rule limiting the factors that may justify an exercise of judicial discretion to increase or decrease a lodestar calculation," ' any one factor 'may be responsible for enhancing or reducing the lodestar.' " (*Culver City*, at p. 1122.)

"' "The award of a multiplier is in the end a discretionary matter largely left to the trial court." [Citation.] "We will not disturb the trial court's exercise of discretion in deciding whether to increase or reduce the lodestar figure unless the fee award is clearly wrong [citation], and we may 'presume the trial court considered all the appropriate factors in choosing the multiplier and applying it to the whole lodestar" ' [citation].' [Citations.] ' "The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." ' " (*Culver City, supra*, 96 Cal.App.5th at p. 1122.)

Hudson challenges the trial court's application of the multiplier on grounds that the court allegedly considered the contingent nature of the legal representation twice—first when it adopted the arbitrator's calculation of the lodestar for arbitration-related attorney's fees, and then a second time when it applied a positive 0.5 multiplier to calculate recoverable post-arbitration fees. We are mindful "a court cannot rely on the contingent nature of the

representation in both setting the lodestar amount *and* in later modifying the lodestar." (*Santana v. FCA US, LLC* (2020) 56 Cal.App.5th 334, 351–352; see *Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841, 879 ["in exercising its discretion, the trial court must not intertwine considerations relevant to the determination of the lodestar amount with factors relevant to whether the lodestar should be adjusted upward"].) However, for several reasons, Hudson has not established that the trial court impermissibly double counted the contingent nature of the representation when it calculated the attorney's fee award.

Preliminarily, Hudson provides no citation to the record to support its claim the arbitrator relied on the contingent nature of the representation when it calculated the lodestar for arbitration-related fees—reason enough for us to find Hudson's double-counting argument waived. (*LNSU, supra*, 94 Cal.App.5th at p. 1071; *Nwosu, supra*, 122 Cal.App.4th at p. 1246.) In any event, there is nothing in the arbitration award, nor in the court's attorney's fee award, to suggest the arbitrator factored the contingent nature of the representation into its calculation of the lodestar for arbitration-related fees. For that independent reason, Hudson's double-counting argument fails. Finally, even if the record supported Hudson's uncorroborated theory that the court considered the contingent nature of the representation when it calculated the lodestar for arbitration-related fees, the trial court *still* would not have double-counted the contingent representation factor in an impermissible way. That is because the court did not apply the multiplier to the lodestar for arbitration-related fees. Rather, it applied the multiplier only to the lodestar for *post-arbitration* fees—a figure that did *not* already factor in the contingent nature of the legal representation. For all of these

21

reasons, we reject Hudson's contention that the trial court abused its discretion by considering the contingent nature of the representation twice.

Hudson also contends the trial court erred by failing to adequately explain its rationale for adding a 0.5 multiplier to the lodestar for the post-arbitration fees. As stated, the trial court found the multiplier was "appropriate given the contingent nature of th[e] case, the skill demonstrated by [Gonzalez's] counsel, and the novelty of the case's procedural posture."

" 'We find no California case law … requiring trial courts to explain their decisions on all motions for attorney fees and costs, or even requiring an express acknowledgment of the lodestar amount. The absence of an explanation of a ruling may make it more difficult for an appellate court to uphold it as reasonable, but we will not presume error based on such an omission. … " ' "All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]" In the absence of evidence to the contrary, we presume that the trial court considered the relevant factors.' " (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1249–1250; see *Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 901 [court was not "required to further clarify its reasons for applying the 1.5 multiplier," where it justified the multiplier by "the contingent nature of the fee award" and the fact "multipliers can range from 2 to 4 or even higher"]; *Pellegrino v. Robert Half International, Inc.* (2010) 182 Cal.App.4th 278, 291 ["Here, the trial court's order stated that it had selected a 1.75 multiplier to calculate plaintiffs' attorney fees after finding that each of the four factors … applied in this case and that a 1.75 multiplier was appropriate. … [T]he court was not required to provide any further

22

explanation absent a statement of decision on this issue or unless the upward adjustment of the lodestar figure was unsupported by the record."].)

In light of these legal authorities and the presumption of correctness applicable to the attorney's fee order, we presume the court relied on appropriate considerations when it selected the rather modest 0.5 multiplier, and we conclude the court was not required to provide further explanation for its multiplier determination.

## IV

## DISPOSITION

The judgment and the postjudgment attorney's fee order are affirmed. Respondent Jazmin Gonzalez is entitled to her costs on appeal.

McCONNELL, P. J.

I CONCUR:

IRION, J.

I CONCUR IN THE RESULT:

O'ROURKE, J.